In re the Application of Guido
Sten PONATH, Petitioner,

and

Jeri Lynn Ponath, Respondent.

No. 93–C–0643–S.

United States District Court,
D. Utah, C.D.

Aug. 17, 1993.

**364**

Keith H. Chiara, Price, UT, Duane R. Smith, Salt Lake City, UT, for petitioner.

David S. Dolowitz, Cohne, Rappaport & Segal, Salt Lake City, UT, for respondent.

## MEMORANDUM DECISION AND ORDER

SAM, District Judge.

This matter is before the court on petitioner's Motion for Return of Child pursuant to the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601–11610 and the Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980 (the "Hague Convention"). Petitioner alleges that the parties' minor child was wrongfully removed by respondent from the Federal Republic of Germany ("Germany") to the United States of America ("United States").

An evidentiary hearing was held on Monday, August 2, 1993, with closing statements being addressed to the court on August 3, 1993. Petitioner was present in court and represented by counsel Duane R. Smith, Esq. and Keith H. Chiara, Esq. Respondent was present in court and represented by counsel David S. Dolowitz, Esq.

The court, having considered the oral and written arguments of counsel, as well as the relevant evidence, including the testimony of witnesses, enters the following Memorandum Decision and Order containing the court's findings of facts and conclusions of law.

## INTRODUCTION

Petitioner and respondent met briefly while he was visiting Utah in July 1990. He returned to Utah in August 1990, and maintained contact with respondent. The couple was married in October 1990 and had a child in July 1991. From the time of their marriage until November 1991, the family resided in Utah. In November 1991, the family traveled to Germany. Respondent and the minor child returned to the United States in September 1992. Petitioner claims that respondent wrongfully removed the child from Germany and he has initiated this action seeking the child's return to Germany for a determination of custody.

The Hague Convention "... establishes legal rights and procedures for the prompt return of children who have been wrongfully removed or retained...." 42 U.S.C. § 11601(a)(4). The United States became a signatory to the Hague Convention in 1988. *Id.* at 11601(b). The objective of the Hague Convention is "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to insure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention, Art. 1(a), (b).

■ Retention or removal of a child is wrongful under the Hague Convention where:

(a) it is in breach of rights of custody attributed to a person ... under the law of the State in which the child was habitually resident immediately before the removal or retention; and

(b) at the time of removal or retention those rights were actually exercised, either

jointly or alone, or would have been so exercised but for the removal or retention.

Hague Convention, Art. 3.

Petitioner seeks return of the minor child to himself or his agent to be returned to Germany for a determination of custody of the child in the courts of that country.

■ Petitioner's burden is to establish that the minor child was wrongfully removed within the meaning of the Hague Convention by a preponderance of the evidence. 42 U.S.C. § 11603(e)(1). Likewise, respondent's burden, as to any exceptions to return of the child afforded by the Hague Convention, must be established by a preponderance of the evidence except that those exceptions, set forth in Article 13b and 20 of the Hague Convention, must be established by clear and convincing evidence.[1] *Id.* at (2).

The threshold issue presented is whether the habitual residence of the child "immediately before the removal" was in Germany, as alleged by petitioner, or in the United States, as asserted by respondent. If the habitual residence of the minor child were in the United States, then there was no wrongful removal. See *Meredith v. Meredith*, 759 F.Supp. 1432, 1436 (D.Ariz.1991) ("To invoke the protection of the Convention, the taking or retention of a minor child must have occurred from a place where the child habitually resides."). The term "habitual residence" is not defined by either the Hague Convention or 42 U.S.C. §§ 11601–11610. "The intent is for the concept [habitual residence] to remain fluid and fact based, without becoming rigid." *Levesque v. Levesque*, 816 F.Supp. 662, 665 (D.Kan.1993). Commenting on this concept, one British court observed:

No definition of 'habitual residence' has ever been included in a Hague Convention. This has been a matter of deliberate policy, the aim being to leave the notion free from technical rules, which can produce rigidity

and inconsistencies as between legal systems.

. . . . .

It is greatly to be hoped that the courts will resist the temptation to develop detailed and restrictive rules as to habitual residence, which might make it as technical a term of art as common law domicile. The facts and circumstances of each case should continue to be assessed without resort to presumptions or pre-suppositions. *In re Bates*, No. CA122.89 at 9–10, High Court of Justice, Fam. Div'n Ct. Royal Court of Justice, United Kingdom (1989) (quoting Dicey & Morris, The Conflicts of Laws 166 (11th Ed.)).

As alluded to earlier, the Hague Convention sets forth certain exceptions under which the court is not bound to order the child returned to the jurisdiction from which wrongful removal was effected. Those exceptions are set out in Article 13,[2] which provides in relevant part as follows:

Notwithstanding the provisions of the preceding Article, the judicial or administrative authority of the requested State is not bound to order the return of the child if the person ... which opposes its return establishes that—

a  the person ... having the care of the person of the child ... consented to or subsequently acquiesced in the removal or retention;  or

b  there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.

. . . . .

Hague Convention, Art. 13.

Respondent has alleged that petitioner consented to her removal of the minor child from Germany to the United States. Testimony was heard on this issue. Respondent has also alleged that there is physical or psychological risk to the child if he is re-

---

1.  Article 13b and 20 exceptions relate to the risk of physical or psychological harm to the child if returned and whether the fundamental principles of human rights and freedoms of the requested state would not permit return of the child.

2.  Article 20 of the Hague Convention also provides: "The return of the child under the provisions of Article 12 may be refused if they would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms."

turned to Germany. However, the latter issue was reserved and no specific testimony or argument was heard. The court, therefore, does not reach the merits of that issue.

## FINDINGS OF FACTS

The testimony of petitioner and respondent is, in many instances, contradictory. The court judges respondent as the more creditable witness and, therefore, gives more weight to her testimony in making its findings of fact.[3]

1. Petitioner is currently a citizen and resident of Germany. Respondent is currently a citizen and resident of the United States.

2. Petitioner and respondent married in Carbon County, Utah on October 13, 1990.

3. Petitioner and respondent have one minor child, Richard, age 2 years. The minor child was born July 21, 1991, in Price, Carbon County, Utah.

4. From the time the minor child was born until November 6, 1991, petitioner, respondent and the minor child resided in Carbon County, Utah.

5. On November 6, 1991, petitioner, respondent and the minor child traveled to Germany on round trip airline tickets for the purpose of visiting petitioner's family. The visit was at the suggestion and request of petitioner. Respondent had suggested a six month open airline ticket, but petitioner said they would be returning to Carbon County within three months. At the time the airline tickets were purchased, the return trip was scheduled for December 5, 1991.

6. The minor child traveled to Germany on a United States passport.

7. Some two weeks after arriving in Germany, petitioner obtained employment. Petitioner, respondent and the minor child re-

sided with petitioner's parents. Commencing on or about April 1992, petitioner began the construction of a house on property adjacent to that of his parents.

8. At the end of three months, approximately February 1992, respondent desired to return to the United States with the minor child, but petitioner refused to permit her and the minor child to return. Petitioner prevented and continued to prevent respondent and the minor child's return to the United States by means of verbal, emotional and physical abuse.

9. Some months later, during a discussion between petitioner and respondent regarding her desire to return with the minor child to the United States, petitioner told respondent that, if she desired to live without him as her husband and as the minor child's father, she and the child could leave Germany.

10. At that time, there was no judicial custody order and no legal proceedings had been commenced concerning the marriage or custody of the child.

11. Respondent and the minor child returned to the United States on September 7, 1992, and have resided in Carbon County, Utah since that time.

12. On September 22, 1992, respondent filed an action for separate maintenance, support and custody in the Seventh Judicial District Court, Carbon County, State of Utah. On February 12, 1993, respondent filed a verified amended complaint seeking a divorce, custody and support. Efforts to serve petitioner in Germany were unsuccessful.

13. Petitioner returned to the United States at the end of February 1993. On March 1, 1993, petitioner was arrested by Carbon County police officials for allegedly attacking respondent's sister-in-law in her home while attempting to see respondent and

---

**3.** The court observes that both parents obviously love the child and that this process is inherently stressful and painful to the parties and their families. In determining the parties' credibility, the court echoes the sentiment of another court faced with a similar dilemma:

> The court notes that determining credibility in this case, where both parents obviously care about the child's welfare and are seeking a

ruling in their favor, is a difficult task at best. At worst, it does a disservice to the parties, by tending to discredit one of the parent's testimony. The court recognizes that each party's truth is colored by his/her perception. Unfortunately, the court must make such determinations.

*Levesque v. Levesque,* 816 F.Supp. 662, 666 n. 3 (D.Kan.1993).

the minor child. The court's finding regarding petitioner's verbal, emotional and physical abuse of respondent is further supported by the evidence and testimony regarding petitioner's egregious conduct regarding his confrontation of the respondent and her sister and the steps he was apparently prepared to take to force his will upon respondent, contrary to law. Petitioner was served with respondent's state court divorce proceedings on March 2, 1993.

14. On March 22, 1993, petitioner filed his answer to respondent's state court divorce proceedings. After bifurcation of proceedings, a decree of divorce was entered on July 7, 1993. Custody, support and other related matters remain pending in state court.

15. Petitioner filed this action on July 9, 1993. Petitioner's request for return of the child pursuant to the Hague Convention was filed with the United States Department of State through the government of Germany by correspondence dated March 29, 1993. There is no evidence, other than petitioner's testimony, which the court judges less creditable than that of respondent, that he made any attempt to contact or see respondent and the minor child before March 1, 1993, almost six months after they returned from Germany.[4]

16. As testified to by Doctor Lynn Ravsten, respondent's clinical psychologist, she is suffering from post traumatic stress disorder. Her behavior, as observed by him, supports her statements that she was verbally, emotionally and physically abused by petitioner.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this matter, pursuant to 42 U.S.C. § 11603(a).

2. Pursuant to 42 U.S.C. § 11603(d), the court makes its findings and determination in accordance with the Hague Convention.

3. For purposes of 42 U.S.C. § 11603(e)(1)(A) and Article 3 of the Hague Convention, the habitual residence of the minor child was in Carbon County, Utah. Be-

tween petitioner and respondent, the more creditable testimony, in the court's view, is that of respondent who testified that she, and the minor child, were detained in Germany against her desires by means of verbal, emotional and physical abuse. The court cannot conclude under such circumstances that respondent and the minor child were habitually resident in Germany within the meaning of the Hague Convention. Although it is the habitual residence of the child that must be determined, the desires and actions of the parents cannot be ignored by the court in making that determination when the child was at the time of removal or retention an infant. The concept of habitual residence must, in the court's opinion, entail some element of voluntariness and purposeful design. Indeed, this notion has been characterized in other cases in terms of "settled purpose".

> The governing principle for ascertaining the elements of habitual residence is contained in the speech of Lord Scarman in R.V. Barnet London Borough Council ex parte Shah [1983] 2 A.C. 309, where he says, at page 314: "and there must be a degree of settled purpose. The purpose may be one or there may be several. It may be specific or general. All that the law requires is that there is a settled purpose. That is not to say that the propositus intends to stay where he is indefinitely. Indeed his purpose while settled may be for a limited period. Education, business or profession, employment, health, family or merely love of the place spring to mind as common reasons for a choice of regular abode, and there may well be many others. All that is necessary is that the purpose of living where one does has a sufficient degree of continuity to be properly described as settled."

*In re Bates*, No. CA 122.89 at 10, High Court of Justice, Fam. Div'n Ct. Royal Court of Justice, United Kingdom (1989). In this case, what began as a voluntary visit to petitioner's family in Germany, albeit an extended visit, might be viewed by the court as a change of habitual residence of the minor

---

4. Petitioner represents, without any documentation, that on November 2, 1992 he filed all necessary papers seeking permanent custody of the

minor child in Germany and that no order or decree has been issued.

**368**

child but for respondent's intent and desire to return to the United States with the minor child and petitioner's willful obstruction of that purpose. Petitioner's coercion of respondent by means of verbal, emotional and physical abuse removed any element of choice and settled purpose which earlier may have been present in the family's decision to visit Germany. The aim of the Hague Convention is to prevent one parent from obtaining an advantage over the other in any future custody dispute. *Friedrich v. Friedrich,* 983 F.2d 1396, 1402 (6th Cir.1993). For the court to grant petitioner's motion, and thereby sanction his behavior in forcing continued residence in Germany upon respondent, and through her, the minor child, would be to thwart a principle purpose of the Hague Convention. In the court's view, coerced residence is not habitual residence within the meaning of the Hague Convention. As noted earlier, the concept of habitual residence, for purposes of the Hague Convention, is viewed to be fluid and fact based. Given the specific facts of this case, the court can draw no conclusion other than that the habitual residence of the child was in Carbon County, Utah. Accordingly, pursuant to 42 U.S.C. § 11603(e)(1), the petitioner has failed to show by a preponderance of the evidence that the minor child has been wrongfully removed or retained within the meaning of the Hague Convention.

██ 4. As an additional and/or alternative basis for the court's ruling, the court concludes that petitioner gave his consent for respondent to return to the United States with the minor child. Viewing the testimony of respondent as the more credible testimony, the court finds, for purposes of the Hague Convention, that respondent has established by a preponderance of the evidence that petitioner gave his consent for respondent to return to the United States with the minor child. This conclusion is further supported by petitioner's failure, for almost six months, to make any meaningful effort to obtain return of the minor child. Accordingly, the court concludes that removal of the child was not wrongful within the meaning of the Hague Convention.

**ORDER**

Therefore, based upon the foregoing Findings of Fact and Conclusions of Law,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. Petitioner, Guido Sten Ponath's Motion for Return of Child is DENIED.

2. Each party shall bear their own fees and costs incurred in this matter.

The clerk of the court is instructed to prepare and enter judgment accordingly.