**Bjorn Michael RYDDER, Plaintiff–Appellee,**

v.

**Susan Marie RYDDER, Defendant– Appellant.**

Nos. 94–3667, 94–3878.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1995.

Decided Feb. 13, 1995.

Thomas J. Shields, Davenport, IA, argued (Mary Woodburn Patch, on the brief), for appellant.

Joseph Anthony Quinn, Des Moines, IA, argued (Steven H. Lytle, on the brief), for appellee.

Before LOKEN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and JONES,* District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Susan Marie Rydder appeals the district court's grant of the petition brought by her husband, Bjorn Michael Rydder, for return of the couple's two children to Poland under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"), 42 U.S.C. §§ 11601–11610. The district court determined that Poland was the habitual residence of the children and that their mother wrongfully removed them to the United States. On appeal, Mrs. Rydder claims that the district court lacked subject matter jurisdiction to designate Poland as the children's habitual residence, that she should have been granted a continuance, and that the children would face intolerable circumstances if returned to Poland. Mrs. Rydder further challenges the district court's award of attorney fees, legal costs, and expenses to her husband. We affirm the order returning the children to Poland, and we reverse and remand the award of fees and legal costs to be reduced in accordance with this opinion.

I.

Appellant Susan Marie Rydder, an American citizen, and appellee Bjorn Michael Rydder, a Danish citizen, were married in 1988. At the time of their marriage, both were registered residents of Sweden. Their son Bjorn Jacob was born in Stockholm on No-

---

* The HONORABLE JOHN B. JONES, Senior District Judge for the District of South Dakota, sitting by designation.

vember 8, 1990, and their daughter Emmelie Marie was born in Stockholm on August 21, 1992. The parties have consistently exercised joint custody of the children. Mrs. Rydder has acted as their primary caretaker, while Mr. Rydder worked full-time to provide for the family's financial needs.

Mr. Rydder's employer transferred him to Warsaw, Poland, in 1992, and the family was relocated with him. (Although the parties agree that the family moved in late November or early December, the district court's order states both that they arrived in October and that they arrived in February.) The district court found that the family intended to remain in Poland for two years, the duration of Mr. Rydder's employment contract, but had no definite plans following that period. The contract has since been extended by one year, through September 30, 1995. All of the family members remain registered residents of Sweden.

The parties have experienced marital difficulties dating at least from their arrival in Poland. In May of 1993, Mrs. Rydder, without the prior knowledge or consent of her husband, left Poland with the two children and traveled to her parents' home in Iowa. She returned to Poland voluntarily after two months, but asserts that she became "fearful" with respect to her husband's behavior. On April 6, 1994, Mrs. Rydder again took the children to Iowa without previously informing their father, leaving behind a note explaining that she intended to file for divorce when she reached the United States. Although the district court acknowledged the parties' earlier disputes, it found no credible evidence that the children had experienced or would risk physical or psychological harm in Poland.

On September 30, 1994, Mr. Rydder petitioned the district court for the return of his children to either Sweden or Poland under the Hague Convention and ICARA. During the one-day bench trial, Mr. Rydder testified that he was willing either to allow his wife to rejoin him in Poland or to hire an au pair to care for the children. The district court ordered the return of the children to Poland.

Subsequently, the district court ordered Mrs. Rydder to pay all of Mr. Rydder's attorney fees, legal costs, and expenses relating to the return of the children. The attorney fees and legal costs total $18,487.42, and the related expenses total 9,667.40. Mrs. Rydder owns stock valued at $18,683, and has worked sporadically as a substitute teacher since her return to Iowa. Her own legal expenses are estimated at $8,506.40.

## II.

The Hague Convention, to which all relevant countries are signatories, attempts to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access." Hague Convention, Preamble. Although this is a case of first impression in the Eighth Circuit, another circuit court has determined that "wrongful removal" is a term of art not strictly defined in the Convention. *Friedrich v. Friedrich*, 983 F.2d 1396, 1400 (6th Cir.1993). It does not require an ad hoc determination of the underlying merits or a balancing of the equities. *Id.* Such action by a court would be contrary to a primary purpose of the Convention: to restore the *status quo ante* and to deter parents from crossing international boundaries in search of a more sympathetic court. *Id.* We agree with this assessment of a court's duty under the Hague Convention. Article 19 of the Convention and ICARA, 42 U.S.C. § 11601(b)(4), do not allow a court applying the Convention to adjudicate the merits of any underlying custody claims. Rather, in an action for the return of a child to the habitual residence, a petitioner must prove only that the child was removed or retained "wrongfully," as that term is defined in Article 3 of the Hague Convention. 42 U.S.C. § 11603(e)(1)(A). A respondent who opposes the return of a child may advance any of the affirmative defenses to return listed in Articles 12, 13, or 20 of the Hague Convention. 42 U.S.C. § 11603(e)(2). We believe, however, that a court applying the Hague Convention should construe these exceptions narrowly. *See Friedrich v. Friedrich*, 983 F.2d at 1403.

■ Mrs. Rydder initially claims that the district court lacked subject matter jurisdiction to determine that the children's "habitual residence" under the Hague Convention was Poland, as Mr. Rydder's petition named Sweden as their habitual residence and Poland as their temporary residence. The district court correctly determined that Mr. Rydder's request for return of the children to Sweden or Poland was actually a pleading in the alternative. Although the Hague Convention does not define "habitual residence," a frequently-cited British case, with which we agree, concluded that there is no real distinction between habitual and ordinary residence. *Friedrich v. Friedrich,* 983 F.2d at 1401, citing *Re Bates,* No. CA 122.89, High Court of Justice, United Kingdom (1989). That court added:

> It is greatly to be hoped that the courts will resist the temptation to develop detailed and restrictive rules as to habitual residence, which might make it as technical a term as common law domicile. The facts and circumstances of each case should continue to be assessed without resort to presumptions or presuppositions.

*Id.* Thus the district court's treatment of the children's Swedish residence registration as a legal fiction of little consequence to the determination of their habitual residence was entirely appropriate.

■ Mrs. Rydder also attempts on appeal to overturn the district court's rejection of an Article 13(b) exception to return of the children under the Hague Convention. Article 13(b) allows a court to deny return of a child to the habitual residence if "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." ICARA requires that a respondent opposing return of a child under Article 13(b) must establish this exception by clear and convincing evidence. 42 U.S.C. § 11603(e)(2)(A). Although Mrs. Rydder cites several authorities that recognize that separating a child from his or her primary caretaker creates a risk of psychological harm (*see* Linda Silberman, *The Hague International Child Abduction Convention: A Progress Report,* 57 L. and Contemp.Probs.,

Summer 1994, at 209; Carolyn Legette, *International Child Abduction and the Hague Convention: Emerging Practice and Interpretation of the Discretionary Exception,* 25 Texas Int'l. L.J. 287 (1990)), the district court was presented with no specific evidence of potential harm to Bjorn Jacob or Emmelie Marie Rydder. On the contrary, the district court found both parties to be "intelligent, mature, loving parents," and this finding was not clearly erroneous. Thus the district court properly determined, on the basis of the evidence presented, that Article 13(b) was not an obstacle to the return of the children to Poland.

■ Because Mrs. Rydder allegedly did not learn of her husband's alternative pleading with respect to the children's habitual residence until three days before the trial, she argues that the district court should have granted her a continuance to gather evidence in support of an Article 13(b) defense to the children's return to Poland. The district court's grant or denial of a continuance is reviewed for abuse of discretion or actual prejudice resulting from the decision. *See, e.g., Souder v. Owens–Corning Fiberglas Corp.,* 939 F.2d 647, 651 (8th Cir.1991). Although Mrs. Rydder may not have been aware that the court could declare Poland to be the children's "habitual residence," Mr. Rydder's petition clearly requested return of the children to "Sweden or Poland." Prior to trial, moreover, Mrs. Rydder had apparently sought opinions regarding relevant Polish law. The district court, interpreting a treaty that attempts to secure the prompt return of wrongfully abducted children, chose not to grant a continuance. We discover no abuse of discretion here, and Mrs. Rydder has not demonstrated actual prejudice.

### III.

■ We are mindful that ICARA requires any court ordering the return of a child under the Hague Convention to award fees and costs to the successful party unless such order would be "clearly inappropriate." 42 U.S.C. § 11607(b)(3). Because of Mrs. Rydder's straitened financial circumstances, however, we find the award of fees and legal costs to Mr. Rydder so excessive as to consti-

tute an abuse of discretion. An award of $10,000, rather than $18,487.42, is more equitable in this particular case. We leave undisturbed the district court's award of expenses in the amount of $9,667.40.

## IV.

Accordingly, we uphold the district court's order returning Bjorn Joseph and Emmelie Marie Rydder to Poland and reverse and remand the award of fees and legal costs for entry of judgment in the amount of $10,000.