[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
INTERIM MEMORANDUM OF DECISION RE: JURISDICTION UNDER HAGUECONVENTION
This case requires the Court to determine whether the Courts of Greece or the Connecticut Superior Court has jurisdiction to determine the custody of a three-year-old child. The controlling laws in this case are "The 1980 Hague Convention on the Civil aspects of International Child Abduction" and "The International Child Abduction Remedies Act" 42 U.S.C. § 1160 et seq., our countries statute which implements the Hague Convention.
Procedurally, this case came to this Court when the plaintiff wife, Kathleen Patricia Pantazatou, started a divorce action in Connecticut in October of 1996, together with an ex parte request for custody of the one minor child Nicole. This ex parte order was granted subject to notice to the defendant husband in Mykonos, agreed. Subsequently, the defendant husband brought a habeas corpus action to prevent the child's removal from the CT Page 9407 State of Connecticut pending a hearing on his Application for return of the child to Greece. That application was filed with the Connecticut court in accordance with the Hague Convention. A motion for appointment of counsel by plaintiff was also filed and approved and that counsel has been instrumental in making sure the child was protected in the context of the Hague Convention standards.
There are two sections of the Hague Convention applicable to this case.
First, Article 3 which provides that the Convention shall apply to any child who was "habitually resident" in a contract state immediately prior to the breach of custody or access. Any applicant seeking the return of the child under that article must first prove by a preponderance of the evidence that a child under the age of sixteen was a habitual resident of the country in order to obtain the return of the child to that country for custody determination.
Second, Articles 13(b) provides, however, that even if a child has been habitually resident in a country that that child need not be returned to that country if there is grave risk that the child's return would expose the child to physical or psychological harm or, otherwise, place the child in an intolerable situation. Therefore, if an applicant proves by a preponderance of the evidence that the child has been habitually a resident in a particular country, then the respondent must establish by clear and convincing evidence that there is a grave risk of the child's return would expose the child to physical or psychological harm in order to prevent the return of the child to the country of habitual residence.
FACTS
Petitioner/defendant, Irinarch Pantazatos (father) a Greek citizen met the respondent/plaintiff, Kathleen Patricia Pantazatou (mother) an American citizen during a vacation she took in Greece in 1987. They were subsequently married in the United States on January 28, 1989 and both moved to the island of Mykonos, Greece after the marriage. The parties continued to reside in Mykonos but had substantial contact with the United States; for example, the husband had a social security card here, driver's license, bank account and he even had work here for a period of time. After a period of time, the mother became CT Page 9408 pregnant and came back to the United States with the approval of the father several months prior to the birth of their child, Nicole on April 8th, 1994. It was agreed by both parties that the medical care here would be more better for the child.
After the birth of Nicole, the mother returned to Mykonos with the child and Nicole was baptized in Mykonos. During the ensuing three years, the child shuttled back and forth between Connecticut and more particularly Cromwell and Mykonos, Greece. Nicole resided in Cromwell from December 9th, 1994 through February 7th, 1995. She resided with her mother in Cromwell from June 21st, 1995 through July 18th, 1995 they returned to Cromwell on November 8, 1995 and remained there until February 14, 1996. All those residences were with the approval of the father.
On September 11th, 1996, however, mother returned to Connecticut with daughter without the approval of the father, in fact, without his knowledge. All other times other than specified, Nicole, the child, resided in Mykonos with her mother and father.
The Court heard testimony of Dr. Anne Price a child psychiatrist that separation of the child from the mother's care would cause grave risk of psychological harm to the child, both short and long term. The Court finds that testimony credible. The Court heard further testimony concerning plaintiff's wife fear of her husband's anger and, the court finds that those fears were real to the wife. The Court also finds that the wife had no means of supporting herself in Mykonos primarily because of the citizenship issue. That concern was conceded by the husband. The husband has been the sole means of the support of the family. He testified that he earned the equivalent of $100,000 U.S. dollars although his income tax returns submitted later reflect an income of about 10 percent of that.
The Court finds that the father registered the family as being resident in Athens only after the separation of the parties in September of 1996 and further that his representation in his application under the Hague Convention that they lived in Athens during the winter months was not true. It has been represented that a custody action has been started in Athens by the defendant husband, but there has been no service on plaintiff. Despite repeated requests, this Court has not been able to get copies of those papers even with the assistance of counsel for the husband. There had been an indication that the plaintiff would be subject CT Page 9409 to contempt in court in Greece if she were to return to Greece despite the lack of notice.
DECISION
The first question for the Court to decide is: Did the petitioner find the proof by a preponderance of the evidence that the child's habitual residence was Greece? The answer is yes. Although there is no question that the parties intended at some future time to permanently reside in the United States, habitual residence cannot be confused with domicile. To determine habitual residence the Court must focus on the child and examine past experience not future intentions. Friedrich v. Friedrich,983 F.2d 1396, 1401 (Sixth Circuit 1993). The greater portion of the child's life was spent in Mykonos as well as the seven months preceding the mother's departure in September of 1996 without the father's consent.
The second question is: Did the respondent mother prove by clear and convincing evidence that there was grave risk of psychological harm of the child if returned to Greece? The answer is yes. The Court was clearly convinced that to return the child without the mother would create a grave risk of psychological harm to the child and more particularly to remove Nicole back to Greece without her mother would create greatest risk of serious psychological harm both short and long term.
If the mother has a home in Greece and financial support and freedom from incarceration pending full investigation and decision, the risk of psychological harm to the child would be minimized because the mother can go with her. This same issue was faced by a British court in C v. C Court of Appeal, Civil Division 14 December 1988 (1989) to ALL ER 465 (1989), 1FLR 403 (1389) 1WLR 65. That Court held that the mother in that case couldn't create the psychological situation by refusing to go back provided that the father would give certain undertakings to the British court and the court of habitual residence, Australia. Those undertakings required by the British court included substantial financial guarantees, removal of a threat of contempt in Australia, medical care, etcetera. That case was cited with approval in Federv. Feder, 63 F.3d 217, [63 F.3d 217], 226 (Third Circuit) 1995. In the Feder case the appellate court reversed a lower finding on habitual residence requiring that court to consider on remand whether or not Mrs. Feder has shown an unqualified return would be detrimental to the child. It charged the lower court CT Page 9410 with investigating the adequacy of the undertaking of Mr. Feder to ensure that the child will not suffer harm.
This Court has received proposed undertakings from each party as well as counsel for the child. The Court is attempting to obtain with the cooperation of all counsel sufficient information to make appropriate orders of undertaking that will be given to this Court and the Greek court as well as the method to ensure its execution. The court needs to know the reason for the difference between applicant's testimony here that he earned $100,000 U.S. versus his current position taken that his income is only $10,000. That information is necessary to provide adequate financial undertakings. That information is being developed by a lawyer accountant in Greece.
This court is attempting to arrange a conference call to a Judge in Greece similar to conference calls in this country under our Uniform Child Custody Act. The purpose is to make sure that undertakings will be honored in Greece. Such an understanding between Judges may obviate the need of a high bond to insure the fulfillment of any undertaking set by this court. Although this type of procedure is not common, it is consistent with the purpose of the Hague Convention to set an appropriate forum and still protect the child.
This is an interim decision pending the completion of the undertaking process.
H. Barall, J.