# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2496

_____

| | | |
|---|---|---|
| Robert Hechter Silverman, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Julie Hechter Silverman, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted:  October 10, 2002

Filed:  December 11, 2002

_____

Before MURPHY,  HEANEY and BEAM, Circuit Judges.

_____

HEANEY, Circuit Judge.

Robert Silverman appeals the district court's ruling that his children were not habitual residents of Israel at the time their mother brought them to the United States and that, even if they were, their return to Israel would be denied because doing so would pose a grave risk of harm to them.  The issues before us are whether the district court (1) improperly determined that the Silverman children's habitual residence is the United States; and (2) improperly applied the grave risk of harm defense by refusing to return the children to Israel.  Because we affirm the district court on the first issue, we do not reach the second issue.

I.      Standard of Review

Neither the Eighth Circuit nor international jurisprudence has articulated a standard of review for the consideration of habitual residence under the Hague Convention on the Civil Aspects of International Child Abduction, Dec. 23, 1981, 51 Fed. Reg. 10494, as implemented by the United States in the International Child Abduction Remedies Act, 42 U.S.C. §§ 11601-11610.  Furthermore, "habitual residence" has not been defined in either the Convention or the Act, and courts must look to the legislative history for guidance on the matter.  The official history and commentary in the Federal Register explains that "'habitual residence' . . . is, in fact, a familiar notion of the Hague Conference, where it is understood as *a purely factual concept*, to be differentiated especially from that of the 'domicile.'" Feder v. Evans-Feder, 63 F.3d 217, 228 (3d Cir. 1995) (quoting Elisa Perez-Vera, "Report of the Special Commission," *Conference de law Haye de droit international prive: Actes et documents de la Quatorzieme session*, Vol. III, Child Abduction, ¶ 60 at 189). "[T]he official history's characterization of habitual residence as 'a purely factual concept' is powerful evidence that its drafters intended a determination of habitual residence to be one of fact, not of law." Evans-Feder, 63 F.3d at 228 (Sarokin, J., dissenting).

The Ninth and Third Circuits have determined that habitual residence can raise mixed questions of fact and law and therefore should be reviewed de novo.  Mozes v. Mozes, 239 F.3d 1067, 1073 (9th Cir. 2001) ("Where, however, the question requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles, then . . . the question should be classified as one of law and reviewed de novo."); Evans-Feder, 63 F.3d 217, 222 n.9 (3d Cir. 1995) ("[W]e believe that the determination of habitual residence is not purely factual, but requires the application of a legal standard . . . to historical and narrative facts.  It is, therefore, a conclusion of law or at least a determination of a mixed question of law and fact.").

We are not persuaded that in this circumstance the Silverman children's habitual residence inquiry raises mixed questions of law and fact. Resolution of this case is largely fact-based, as are most cases arising under the Hague Convention. See, e.g., Mozes, 239 F.3d at 1076 ("[I]n those cases where intention or purpose is relevant – for example, where it is necessary to decide whether an absence is intended to be temporary and short-term – the intention or purpose which has to be taken into account is that of the person or persons entitled to fix the place of the child's residence.") (citation omitted); Evans-Feder, 63 F.3d at 229 ("[A] child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization and which has a 'degree of settled purpose' from the child's perspective."); Friedrich v. Friedrich, 983 F.2d 1396, 1401 (6th Cir. 1993) ("To determine the habitual residence, the court must focus on the child, not the parents, and examine past experience, not future intentions."). In Rydder v. Rydder, 49 F.3d 369, 373 (8th Cir. 1995), this circuit held that there is "no real distinction between habitual and ordinary residence," and relied on In Re Bates, No. CA 122.89, High Court of Justice, United Kingdom (1989), which observed that:

> It is greatly to be hoped that the courts will resist the temptation to develop detailed and restrictive rules as to habitual residence, which might make it as technical a term as common law domicile. The facts and circumstances of each case should continue to be assessed without resort to presumptions or presuppositions.

It is quite evident that "[t]he jurisprudence of habitual residence has generally reflected the fact-bound nature of the inquiry." Evans-Feder, 63 F.3d at 228 (Sarokin, J., dissenting).

In its conclusions of law, the district court found that the determination of habitual residence is a fact-based inquiry to be analyzed on a case-by-case basis. We

agree with the court below that the Silverman children's habitual residence is solely a question of fact, and we therefore review the district court's holding for clear error.

Pursuant to the Hague Convention, Robert Silverman (Robert) must initially prove by a preponderance of the evidence that Julie Silverman (Julie) removed their children from their habitual residence, which Robert alleges is Israel. 42 U.S.C. § 11603(e)(1)(A). If he meets this burden, Julie must show by clear and convincing evidence the applicability of one of the exceptions set forth in Articles 13b or 20 of the Convention. 42 U.S.C. § 11603(e)(2)(A); Nunez-Escudero v. Tice-Menley, 58 F.3d 374, 375-76 (8th Cir. 1995). Because we believe the district court properly concluded that the boys' habitual residence is the United States, we do not reach the affirmative defense presented by Julie.

The district court concluded that Sam and Jacob's habitual residence never changed from the United States to Israel for the following reasons: with the exception of the eleven months that the boys lived in Israel (July 1999 through June 2000), they have lived their entire lives in the United States; their time in Israel would have been shortened had Julie been free to travel outside of Israel sooner; Julie's residence in Israel was coerced; she moved to Israel to attempt to preserve her marriage, but did not intend to make Israel the family's habitual residence; and there are questions regarding the family's intent to live in Israel permanently. Furthermore, in January 2000, Julie and Robert returned to Minnesota to complete bankruptcy proceedings, where they both stated under oath that their permanent address was Plymouth, Minnesota. In April 2000, they filed a joint United States income tax form for 1999, which listed their address as Plymouth, Minnesota.

We conclude that the determination of Sam and Jacob's habitual residence is a factual finding, and hold that the district court's findings are not clearly erroneous. We affirm its ruling that the boys' habitual residence is the United States.

BEAM, Circuit Judge, dissenting.

I respectfully dissent. The district court erred in ruling that the Silverman children's habitual residence was in the United States and that the children would be subjected to a grave risk of harm if they were returned to Israel. Therefore, I would reverse the district court's decision.

First, I disagree with the court's standard of review. While the underlying findings of fact in this case should be reviewed for clear error, the application of the Hague Convention to those findings is not a pure factual question as the court suggests. Blondin v. Dubois, 238 F.3d 153, 158 (2d Cir. 2001) (the "application of the Convention to the facts [the district court] has found . . . is subject to de novo review"). The determination of habitual residence under the Convention is based on facts, but the conclusion is a legal determination. Such a determination warrants at least heightened review, if not de novo review. We should follow the well-reasoned decision of the Third Circuit in Feder v. Evans-Feder, 63 F.3d 217, 222 n.9 (3d Cir. 1995), and employ a mixed standard of review. Using that standard, we should uphold the basic findings of fact of the district court,[1] but reverse the resulting determination that the children's habitual residence never changed from the United States. Nevertheless, even utilizing the court's clear error standard of review, I would find that the district court committed a clear error in finding that the United States is the Silverman children's habitual residence.

---

[1]Such facts include those facts enumerated by the district court under the heading "Findings of Fact." Silverman v. Silverman, No. Civ. 00-2274, 2002 WL 971808, at *1-4 (D. Minn. May 9, 2002). At no point in this section of the opinion does the district court include its determination that the United States is the children's habitual residence. This determination occurs later in the opinion, under the heading "Conclusions of Law."

-5-

As part of its factual findings, the district court determined that 1) Robert and Julie sold their home in Minnesota, 2) Julie wanted to move to Israel to raise her children, 3) the move was intended to be permanent, 4) the family rented an apartment in Israel, and 5) the children were enrolled in school in Israel and participated in activities there. These facts all show parental intent to move and remain in Israel with the children, Friedrich v. Friedrich, 983 F.2d 1396, 1401 (6th Cir. 1993) (Freidrich I), as well as a "degree of settled purpose" from the children's perspective. Feder, 63 F.3d at 224. Despite these facts, the court determined that the children's habitual residence never shifted from Minnesota because Julie was abused by Robert after they arrived in Israel, Julie changed her mind and would have moved back to Minnesota after only a few months had Robert allowed her to, and both Robert and Julie had sworn under oath that their residence was Minnesota in the bankruptcy proceedings. These facts are all either irrelevant or misapplied.

In Feder, 63 F.3d at 220, 224, the Third Circuit reversed a trial court's determination of habitual residence in a case with facts similar to this one. In Feder, the parents moved to Australia with their son. The father intended to stay there, while the mother had doubts about her marriage and about Australia. The family did not sell their house in the United States, but did buy one in Australia. Six months after moving to Australia, the mother took the son on a "vacation" to the United States and, while there, filed for divorce and custody. The trial court found that the son's habitual residence was the United States because the mother never decided for sure to stay in Australia. The Third Circuit reversed, emphasizing the need to look at both parents' intentions and the lifestyle of the son (who had enrolled in school in Australia) and discounting the mother's plan to return to the United States if the marriage failed while in Australia. Id. at 224. These facts are analogous to the facts in this case. Julie's change of heart about remaining in Israel does not affect her children's habitual residence there.

The district court in this case also found that Julie's continued residence in Israel was coerced. Habitual residence is not established when the removing spouse is coerced involuntarily to move to or remain in another country. Tsarbopoulos v. Tsarbopoulos, 176 F. Supp. 2d 1045, 1055 (E.D. Wash. 2001) (father's intent to remain in foreign country concealed from mother and abuse of mother and children eliminated any choice in the move); Ponath v. Ponath, 829 F. Supp. 363, 367 (D. Utah 1993) ("move" was expressed to be, and intended by mother to be, an extended vacation). Unlike the situations in Tsarbopoulos and Ponath, here there was no abuse prior to the move, there was no coercion in getting Julie to move to Israel, and there is no alleged abuse of the children. Julie intended to move to Israel and she intended to make Israel her home.

The district court also fails to consider that Julie initially wanted to get a divorce in Israel, although the record supports this fact. When she contacted an attorney in Israel, however, she was told that she would probably lose custody of her children in the Israeli Rabbinical court. In Rydder v. Rydder, 49 F.3d 369, 372 (8th Cir. 1995), this court addressed a "habitual residence" issue by referring to the primary purpose of the Convention: "to restore the *status quo ante* and to deter parents from crossing international boundaries in search of a more sympathetic court." This court upheld the district court's decision to return children to their father in Poland after their mother, who was having marital difficulties, took them to the United States, without the consent of her husband, to obtain a divorce and custody. Id. This case is analogous. After speaking with her attorney in Israel, but without filing for a divorce or custody there, Julie moved to the United States and promptly obtained the desired custody decision here. This appears to be the sort of forum shopping addressed in Rydder that the Convention was designed to prevent. Id.

For these reasons, we should find that the children's habitual residence is in Israel and that Robert has met his burden of presenting a prima facie case under the Convention. Unlike the court, I would therefore address the second ruling by the

district court that Julie has proven an exception to the Convention under Article 13(b). Both parties agreed that this determination should be reviewed de novo.

The district court found that even if the children's habitual residence is in Israel, they need not be returned to Israel because they face a "grave risk of physical harm" if returned there. The district court reached this conclusion, in part, because the violence in Israel makes it a "zone of war" which is dangerous for the children.

The grave risk of physical or psychological harm defense is an affirmative defense that Julie must prove with clear and convincing evidence. 42 U.S.C. § 11603; Friedrich I, 983 F.2d at 1400. In Rydder, this court held that in order to apply the Article 13(b) exception, the court would need to cite specific evidence of potential harm to the individual children. 49 F. 3d at 373. There are two types of grave risk that are appropriate under Article 13(b): sending a child to a "zone of war, famine, or disease," or in cases of serious abuse or neglect. Friedrich v. Friedrich, 78 F.3d 1060, 1069 (6th Cir. 1996) (Friedrich II); Dubois, 238 F.3d at 162.

The district court found that the current situation in Israel constitutes a "zone of war" warranting application of the "grave risk" exception. In Freier v. Freier, 969 F. Supp. 436, 443 (E.D. Mich. 1996), the district court found that Israel in 1996 was not a "zone of war" under Article 13(b). In so finding, the court determined that the fighting was 15-90 minutes from the children's home, no schools were closed, businesses were open, and the mother was able to travel to and from the country. Id. No subsequent case has found that Israel is a "zone of war" under the Convention. In fact, there does not appear to be a case that finds any country a "zone of war" under the Convention.[2] Nor does the district court cite any evidence that these children are

_____

[2]The district court and Julie did not cite any cases to the contrary. On August 13, 2002, in Mendez Lynch v. Mendez Lynch, the District Court of Florida considered, and rejected, a claim that Argentina is a zone of war under the Convention. 220 F. Supp. 2d 1347, 1365-66 (M.D. Fla. 2002).

in any more specific danger living in Israel than they were when their mother voluntarily moved them there in 1999. Rather, the evidence centered on general regional violence, such as suicide bombers, that threaten everyone in Israel.

Additionally, the district court erred in taking into account the "fact that Sam and Jacob are settled in their new environment."[3] A removing parent "must not be allowed to abduct a child and then–when brought to court–complain that the child has grown used to the surroundings to which they were abducted." Friedrich II, 78 F.3d at 1068.

For these reasons, I would find that because Israel is not a "zone of war" as meant by the Convention, Julie has not met her burden of proving that a grave risk of harm exists. As no other exception applies, I would grant Robert's Hague petition, reverse the decision of the district court, and return the children to Israel for a proper custody determination in the Israeli court system.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[3]I think the district court may also have erred in considering ten-year-old Sam's views. Article 13 of the Convention provides that a court may only consider a child's wishes if the child has attained an age and degree of maturity at which it is appropriate to take account of his views. In England v. England, 234 F.3d 268, 272 (5th Cir. 2000), the Fifth Circuit held that it was error to consider a thirteen-year-old child's opinions because her maturity had not been proven by a preponderance of the evidence. The proponent of interviewing the child has the burden of proving such maturity. Id.