**STEFFEN F., Petitioner,**

v.

**SEVERINA P., Respondent.**

**No. CV 96–481 TUC JMR.**

United States District Court,
D. Arizona.

April 16, 1997.

Susan Gaylord Willis, Fennemore Craig, Tucson, AZ, for petitioner.

Hugh Cawthorne, Taylor & Cawthorne Ltd., Tucson, AZ, for respondent.

## ORDER

ROLL, District Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

### JUDGMENT

This matter involves the temporary custody of a three year old boy. It was tried to the Court March 11–13, 1997. This Court has jurisdiction pursuant to the Convention on the Civil Aspects of Child Abduction signed at the Hague on 25 October 1980 ("Hague Convention") and the implementing statute, the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.* For the reasons set forth below, it is ordered that Jaime F. remain in the custody of his mother, Severina P., until permanent custody is awarded by a court of competent jurisdiction.

In the interest of providing some background to the findings of fact and conclusions of law, this Order will first outline the evidence presented to the Court at the trial, followed by some of the relevant procedural history in this case and the applicable law. Finally, the Order outlines the findings of fact and conclusions of law.

*Evidence at Trial*

Jaime F. is a three year old boy. His mother is Severina P. and his father is Steffen F. Severina P. is a citizen of Great Britain, the United States, and the Federal Republic of Germany ("Germany"). Steffen F. is a citizen of Germany. Jaime F. was born in Germany and is a citizen of both Germany and the United States. Both Severina P. and

Steffen F. were among the witnesses in the three day trial regarding the interim custody of Jaime F.

Steffen F. and Severina P. lived in Germany and became romantically involved in late 1990 or early 1991. At that time, Severina P. was pregnant by another man whose child, Tricia P., was born in Germany on August 22, 1991. In early 1992, Severina P. and Steffen F. began to cohabit, and Tricia P. lived with them. Steffen F. was, and still is, employed as an electrical engineer in the Uniformed Service of the German Air Force at Ramstein Air Base. Severina P. was a nursing student.

On December 10, 1993, Steffen F. and Severina P. were married in Landstuhl, Germany. By all accounts, the marriage was a stormy one and, almost immediately, the couple discussed divorce. On March 10, 1994, Jaime F. was born. The marital situation did not improve, however, and on March 3, 1995, Severina P. moved out of the family residence, taking both children with her.

On March 13, 1995, Severina P. and Steffen F. met together with their attorneys to discuss the terms of the separation and the custody of the two children. An arrangement was agreed upon wherein Steffen F. would have physical custody of both children every other weekend, and visits in between those times were permissible. Those arrangements were carried out by the parties.

Eight months later, on November 13, 1995, with no advance notice given to Steffen F., Severina P. left Germany with Jaime F. and Tricia P. That day, Severina P. mailed a letter to Steffen F., which stated, in part: "As you read this letter, we are already out of the country.... If you try to find me, good luck." They flew to Detroit, Michigan, where they were met by a male friend of Severina P. who was in the process of obtaining a divorce. After approximately ten days in which the four lived together in Dayton, Ohio, they drove to Tucson, Arizona.

Since arriving in Arizona, Severina P. and the children have lived in a number of different locations. Most recently, the three live with Severina P.'s parents, who now own a home in Arizona. Severina P. did not direct-ly notify Steffen F. of her location, but he eventually learned of it when he was served with dissolution papers that Severina P. had filed in Pima County Superior Court. Since learning of his whereabouts, Steffen F. has been able to visit Jaime F. at least once when Steffen F. was in Arizona for some court proceedings.

In addition to testimony regarding the family history, evidence was presented at the trial indicating that Tricia P. had been sexually abused. This evidence included testimony that Tricia P. has engaged in inappropriately sexualized conduct, the fact that Tricia P. had a yeast infection and vaginal discharge prior to leaving Germany, a clinical psychologist's testimony that Tricia P. told him that "papa" had touched her "pee pee," and the opinion of Dr. Jerry Richard Day, a psychologist, that Tricia P. had been sexually molested. Steffen F. testified that Severina P. threatened him with sexual abuse allegations should he contest Jaime F.'s custody.

There was also testimony as to the psychological status of both Tricia P. and Jaime F. Dr. Jerry Day testified extensively concerning the results of psychological testing administered to and interviews of the children. The tests included the Twenty–Five Point Bonding Assessment, the House, Tree, Person Test, and the Children's Apperception Test. He concluded that both children were attached and bonded to their mother, Severina P. Dr. Day also testified concerning the likely consequences of unattaching and unbonding a child after bonding and attachment has occurred. Steffen F. presented no expert witnesses to counter the testimony of Dr. Day.

*Procedural Background*

There have been a number of judicial proceedings initiated in both Germany and the United States pertaining to the custody of Jaime F.

On January 30, 1996, Severina P. filed a petition to establish child custody in the Superior Court of the State of Arizona, Pima County. The Pima County Superior Court declined to exercise jurisdiction over the issue of Jaime F.'s custody.

Steffen F. fared better. After Severina P. left Germany with the two children, Steffen F. filed a petition for custody of Jaime F. in the Family Law Division of the Landstuhl District Court in Germany. That court awarded Steffen F. custody of Jaime F. for the duration of the parties' separation on June 13, 1996.

On April 15, 1996, approximately five months after Severina P. left Germany with Jaime F. and Tricia P., Steffen F. filed an application for assistance under the Hague Convention on Child Abduction with the United States Central Authority.

The Pima County Superior Court granted Severina P. dissolution of her marriage to Steffen F. in August of 1996. That dissolution decree did not address any custodial issues involving Jaime F.

Because the Landstuhl District Court order awarding Steffen F. custody of Jaime F. on June 13, 1996 was not an award of permanent custody, after Severina P. obtained the dissolution decree in August 1996, Steffen F. sought and obtained a decree of "preliminary" permanent custody of Jaime F. That decree was entered February 24, 1997, by the Landstuhl District Court, Family Law Division.

Finally, on July 25, 1996, Steffen F. filed the Petition for Return of Child Pursuant to the Hague Convention in this Court. The parties' need for discovery resulted in this matter not being tried to the Court until March 1997.

### Applicable Law

Under the Hague Convention and the International Child Abductions Remedies Act, 42 U.S.C. § 11601 *et seq.*, the issue before this Court is a very narrow one. Specifically, this Court must determine whether, pending a determination of custody, Jaime F. should be returned to Germany and his father, Steffen F., or remain in the United States with his mother, Severina P.

■ Pursuant to the Hague Convention, as Petitioner in this action, Steffen F. must prove the following three elements by a preponderance of the evidence: (1) Jaime F. was an "habitual resident" of Germany; (2) Steffen F. had either sole or joint rights of custody concerning Jaime F; and, (3) at the time of Jaime F.'s removal from Germany, Steffen F. was exercising those custodial rights. 42 U.S.C. § 11603(e)(1)(A); Hague Convention, Art. 3. Once that burden is met, the burden shifts to Respondent, Severina P., who must prove at least one of three affirmative defenses she has raised to prevent the return of Jaime F. to his father. 42 U.S.C. § 11603(e)(2)(A) and (B); Hague Convention Art. 12, 13(b) and 20. *See also, Friedrich v. Friedrich*, 983 F.2d 1396 (6th Cir.1993).

The first of these affirmative defenses requires proof by a preponderance of the evidence that Jaime F. has now settled into his new environment and that Steffen F. did not commence proceedings for return of the child until after a period of one year had expired following wrongful removal of the child. 42 U.S.C. § 11603(e)(2)(B); Hague Convention, Art. 12.

A second affirmative defense is provided for under 42 U.S.C. § 11603(e)(2)(A) and the Hague Convention, Art. 20. That affirmative defense requires proof by clear and convincing evidence that Jaime F.'s return to Germany "would not be permitted by the fundamental principles of the requested state relating to the protection of human rights and fundamental freedoms." Hague Convention, Art. 20.

The final affirmative defense raised by Severina P. requires proof by clear and convincing evidence that Jaime F. should not be returned to the country of the child's habitual residence because "there is a grave risk that his return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." 42 U.S.C. § 11603(e)(2)(A); Hague Convention, Art. 13(b). Most of Severina P.'s evidence at trial pertained to this defense.

### Discussion

#### A. Petitioner's Initial Burden.

Based on the facts presented by both Petitioner and Respondent, Steffen F. proved by a preponderance of the evidence that: (1) Jaime F. was an habitual resident of Germany and was removed from that country by Severina P.; (2) at the time that Severina P.

removed Jaime F., Steffen F. had either sole or joint custody of Jaime F.; and (3) at the time of removal, Steffen F. was exercising his custodial rights.

■ Jaime F. was born in Germany and lived his entire life there until Severina P. brought him to the United States in November 1995. Therefore, he was clearly a "habitual resident" of Germany when Severina P. left Germany with him. *See, e.g., Meredith v. Meredith,* 759 F.Supp. 1432 (D.Ariz.1991). It is uncontroverted that Severina P. removed Jaime F. from Germany. At the time Severina P. took Jaime F., she did so wrongfully because Steffen F. had joint custody of Jaime F. and was exercising his custodial rights as evidenced by both Severina P.'s and Steffen F.'s testimony regarding the terms of their separation as agreed to in March 1995. BGB § 1626, *translated in The German Civil Code* § 1626 (Simon L. Goren trans., Rothman & Co.1994) (hereafter "German Civil Code § 1626"); *Currier v. Currier,* 845 F.Supp. 916, 921 (D.N.H.1994).

### B. Affirmative Defenses.

Because Steffen F., has met his initial burden of proof, Severina P., in order to prevent the return of Jaime F. to his father in Germany, has the burden of proving that at least one of the available affirmative defenses applies.

### 1. New environment and passage of more than one year.

The affirmative defense that Jaime F. has settled into his new environment and that Steffen F. permitted over one year to expire following Jaime F.'s wrongful removal before commencing proceedings to obtain Jaime F.'s return is inapplicable. The second prong of this defense is not supported by the facts. Jaime F. was taken from Germany on November 13, 1995, and Steffen F. filed this action on July 25, 1996. This is well within one year of Jaime F.'s abduction. Therefore, Severina P. failed to prove this affirmative defense by a preponderance of the evidence.

### 2. Violation of human rights and fundamental freedom.

Nor is the second affirmative defense raised by Severina P. applicable. There is nothing in the record to indicate that return of Jaime F. to Germany would be violative of human rights and fundamental freedoms. Therefore, Severina P. has failed to establish this affirmative defense.

### 3. Grave risk of harm.

■ Only the affirmative defense of grave risk of harm to Jaime F. remains to be considered. Severina P. has the burden of establishing this defense by clear and convincing evidence.

#### a. Sexual abuse.

Severina P. argues that a grave risk to Jaime F. exists because Steffen F. molested Severina P.'s daughter, Tricia P. There was no evidence that Jaime F. was molested. Evidence that Tricia P. was molested is only probative to the extent that Tricia P.'s molestation is attributable to Steffen F. If Steffen F. is responsible for molesting Tricia P. it may be inferred that if Steffen F. molested Tricia P., Steffen F. would be an unfit father for Jaime F., and Jaime F. would also be at risk of molestation.

While it is highly probable, based on the testimony of the fact witnesses and the psychologists, that Tricia P. has suffered sexual abuse at some point in her life, Severina P. has not shown by clear and convincing evidence that Steffen F. was responsible for that abuse. Because it has not been shown that any abuse is attributable to Steffen F., it cannot be inferred that Jaime F. would be physically at risk of abuse if he were returned to his father or that Steffen F. is an unfit parent. Accordingly, the affirmative defense of grave risk of harm to Jaime F. may not be grounded upon Steffen F.'s alleged sexual abuse of Tricia P.

#### b. Bonding and attachment.

■ Severina P. also provided evidence of another source of grave risk to Jaime F. if he were returned to Germany, that being psychological harm. Dr. Jerry Day offered compelling testimony that Jaime F. faces a grave

risk of psychological harm if he is returned to Germany. After testifying that Jaime F. was bonded and attached to his mother, Dr. Day stated that removal of Jaime F. from his mother for any period of time longer than a few weeks would likely result in unbonding and unattachment. He stated that a grave risk exists because a child being unbonded and unattached often produces long-term, serious psychological problems. Such children often grow up to be manipulative and untrusting. He stated that sociopaths tend to be adults who were unbonded as children. He also stated that a painful separation such as would occur here should Jaime F. return to Germany would likely result in Jaime F. suffering significant disorders. Dr. Day further testified that, although it is possible for a child of Jaime F.'s age who has bonded and attached to his mother, upon removal from her, to reattach to the child's father, the prospects for rebonding and reattachment are bleak.

Steffen F. argues that bonding and attachment issues do not rise to the level of grave risk of harm, relying upon *Friedrich v. Friedrich*, 78 F.3d 1060 (6th Cir.1996). There, the Sixth Circuit stated that grave risk of harm exists in only two situations: (1) where return of the child puts the child in imminent danger prior to resolution of the custody dispute, for example, returning a child to a war zone, or (2) in cases of serious abuse or neglect, or extraordinary emotional dependence, where the court in the country of the child's habitual residence may be incapable or unwilling to give the child adequate protection. 78 F.3d at 1068.

Under the Sixth Circuit's reasoning, issues such as attachment and bonding, even when constituting extraordinary emotional dependence, do not meet the requisite grave risk of harm absent an additional finding that the court in the country of the child's habitual residence is incapable or unwilling to give the child adequate protection. Should the Sixth Circuit's interpretation of grave risk of harm be applied to this matter, Severina P. would fail to make the necessary showing because

any resulting detachment and unbonding would result from Jaime F. being deprived of his mother, not from lack of effort by a German court.

It is significant, however, that language in the Eighth Circuit decision of *Rydder v. Rydder*, 49 F.3d 369, 373 (8th Cir.1995) suggests that "specific evidence of potential harm" to a child as a result of separation from a primary caregiver may constitute grave risk of harm under the Hague Convention. There, a mother relied upon several authorities "that recognize that separating a child from his or her primary caretaker creates a risk of psychological harm." 49 F.3d at 373 (citations omitted). Based on the facts before it, the Eighth Circuit declined to find a grave risk of harm, emphasizing that the mother had failed to present "specific evidence of potential harm to the children at issue." *Id.*

It is also notable that at least one previous petition pursuant to the Hague Convention has been denied because the court found that the child's return would be psychologically dangerous to the child. While this Court clearly recognizes the absence of precedential impact on this Court of any foreign court decision[1] and the absence of precedential impact in Germany of a German court decision, Germany being a civil law country,[2] the decision in *B. v. B.*, Family Court of Westerberg, September 29, 1992, is nevertheless instructive. *B. v. B.* is a mirror case to the instant matter. There, a German court found that grave risk of harm existed should a German child abducted from Texas and taken to Germany be returned to Texas, because of the "intensive bond between [German] mother and child."

In response to Severina P.'s arguments of psychological harm, Steffen F. relies heavily upon the Sixth Circuit's statement that "[a] removing parent must not be allowed to abduct a child and then—when brought to court—complain that the child has grown used to the surroundings to which they were abducted." 78 F.3d at 1068. Steffen F. argues that if Jaime F. is more bonded to

---

1. *See,* 20 Am.Jur.2d *Courts* § 164.

2. *See* James L. Dennis, *Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent,* 54 La. L.Rev. 1 (1993).

Severina P. than he is to Steffen F., it was a result of Severina P.'s abduction of Jaime F. and she should not be allowed to benefit from such wrongful actions.

Certainly this Court would agree that no parent should be rewarded for wrongfully abducting a child. However, punishment of the wayward parent should not be the single decisive factor in resolving this matter. Where bonding and attachment have occurred and removal of the child would likely cause great harm to that child, it would be troubling to remove the child from that parent in order to punish the parent for the wrongful act of abduction.

Severina P. acted wrongfully in removing Jaime F. from Germany. In doing so, she deprived Jaime F. of contact with his father and caused Steffen F. to go to extraordinary lengths to locate his son and seek his lawful return. This conduct is inexcusable. Nevertheless, her conduct should not obligate this Court to ignore compelling proof that the return of Jaime F. to Germany at this time would pose a grave risk of psychological harm to him now and in the future.

Having weighed all the evidence before it, the Court concludes that Respondent Severina P. has proven by clear and convincing evidence that a grave risk of harm exists if Jaime F. were returned to Germany. The grave risk of harm arises from the fact that Jaime F. has attached and bonded to his mother and is likely to suffer detachment and unbonding should he be removed from her.

*Findings of Fact*

Based upon the evidence presented at trial, the Court makes the following findings of fact:

1. Steffen F. is a citizen of Germany and Severina P. is a citizen of Great Britain, the United States and Germany.

2. At all relevant times, up until November 13, 1995, Steffen F. and Severina P. lived in Germany, although Severina P. did travel to the United States for approximately nineteen days in 1995.

3. Steffen F. was, and still is, employed as an electrical engineer in the Uniformed Service of the German Air Force at Ramstein Air Base.

4. Steffen F. and Severina P. began a romantic relationship in late 1990 or early 1991. At that time Severina P. was pregnant by another man.

5. Severina P.'s child, Tricia P., was born August 22, 1991.

6. In early 1992, Steffen F. and Severina P. began to cohabit. Tricia P. lived with them.

7. Steffen F. and Severina P. were married on December 10, 1993.

8. Jaime F., son of Steffen F. and Severina P., was born on March 10, 1994, in Germany. Jaime F. is a dual citizen of Germany and the United States.

9. Steffen F.'s and Severina P.'s marriage was a stormy one. Almost immediately, the couple discussed divorce.

10. On March 3, 1995, Severina P. moved out of the family residence and took Jaime F. and Tricia P. with her.

11. On March 13, 1995, Steffen F., Severina P. and their respective attorneys met to discuss separation and shared custody of both children.

12. In July 1995, Tricia P. had a yeast infection, the cause of which is unknown.

13. On November 13, 1995, Severina P. left Germany with Tricia P. and Jaime F. Before leaving Germany, Severina P. wrote a letter to Steffen F. in which she stated in part: "As you read this letter, we are already out of the country.... If you try to find me, good luck."

14. Severina P. and the two children flew from Frankfurt, Germany, to Detroit, Michigan, where they were met a male friend of Severina P.'s who was in the process of obtaining a divorce. The male friend, Severina P. and the two children drove to his home in Dayton, Ohio, stayed there for approximately 10 days, then drove to Tucson, Arizona.

15. On November 15, 1995, Steffen F. received Severina P.'s letter of November 13, 1995.

16. Steffen F. filed a petition for custody in the Landstuhl District Court, Family Law Division, in Germany on January 18, 1996.

17. On January 30, 1996, Severina P. filed a petition to establish child custody in the Superior Court of the State of Arizona, Pima County.

18. The Pima County Superior Court declined to exercise jurisdiction concerning Jaime F.'s custody. This is reflected in an order dated April 3, 1996.

19. On April 15, 1996, Steffen F. filed with the United States Central Authority an application for assistance under the Hague Convention on Child Abduction, seeking the return of Jaime F.

20. The Landstuhl District Court, Family Law Division, entered an order June 13, 1996, awarding custody of Jaime F. to Steffen F., for the duration of the parties' separation.

21. Severina P. was granted a dissolution of her marriage to Steffen F. in August 1996 by the Pima County Superior Court. That dissolution decree did not address any custody issues involving Jaime F.

22. After Severina P. obtained the dissolution decree in Pima County Superior Court, Steffen F. sought permanent custody of Jaime F. in Germany. He was awarded custody by the Landstuhl District Court, Family Law Division on February 24, 1997.

23. On July 25, 1996, Steffen F. filed a Petition for Return of Child Pursuant to the Hague Convention in this Court.

24. Substantial evidence exists that Tricia P. has been sexually abused at some point in time. The identity of the molester was not clearly established.

25. Based on the testimony of Dr. Jerry Day, a psychologist, it is clear that Jaime F. is bonded and attached to his mother, Respondent Severina P., and that removal of Jaime F. from his mother at this time would pose a grave risk of harm to Jaime F.

26. Based on the testimony of Dr. Jerry Day, Jaime F. is not bonded and attached to his father.

27. Based on the testimony of Dr. Jerry Day, it is highly unlikely that Jaime F. would bond and attach to Steffen F. or any other person if Jaime F. were removed from his mother.

*Conclusions of Law*

The Court makes the following conclusions of law:

1. This Court has jurisdiction pursuant to the Convention on the Civil Aspects of Child Abduction signed at the Hague on 25 October 1980 and the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.*

2. The three elements of a cause of action for return of an abducted child under the Hague Convention are: (1) the child was an habitual resident of the country from which the child was abducted; (2) the petitioning parent had either sole or joint rights of custody of the child, and (3) at the time of wrongful removal, the petitioning parent was exercising those rights. 42 U.S.C. § 11603(e)(1)(A); Hague Convention, Art. 3.

3. At the time Severina P. removed Jaime F. from Germany, Germany was Jaime F.'s country of habitual residence within the meaning of the Hague Convention, Art. 3, and 42 U.S.C. § 11603(e)(1)(A).

4. Under the German Civil Code § 1626, Steffen F. and Severina P. had joint custody of Jaime F. up until November 13, 1995, when Severina P. left Germany with Jaime F.

5. At the time Jaime F. was removed from Germany, Steffen F. was exercising his custody rights within the meaning of the Hague Convention.

6. Severina P. removed Jaime F. from Germany wrongfully because she removed Jaime F. to the United States in derogation of Steffen F.'s custody rights which he was exercising at the time of the removal.

7. The Court finds by a preponderance of the evidence that Steffen F. has established the elements of a cause of action under the Hague Convention.

8. Once a petitioner has made a *prima facia* case under the Hague Convention, respondent must prove the applicability of one

of the delineated affirmative defenses under the Convention.

9. Respondent has failed to prove by a preponderance of the evidence that Jaime F. has settled into his new environment and that Steffen F. permitted more than one year to expire before initiating proceedings for return of Jaime F., based upon 42 U.S.C. § 11603(e)(2)(B) and the Hague Convention, Art. 12.

10. Respondent has failed to prove by clear and convincing evidence that Jaime F. should not be returned to Germany because his return "would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms," based upon 42 U.S.C. § 11603(e)(2)(A) and the Hague Convention, Art. 20.

11. Respondent has failed to prove by clear and convincing evidence that Steffen F. sexually abused Tricia P.

12. Proof that a child has attached and bonded with a parent and that the child would become detached and unbonded in the event of removal from that parent may constitute a grave risk of harm under the Hague Convention, Art. 13(b), and 42 U.S.C. § 11603(e)(2)(A)

13. Respondent has established by clear and convincing evidence that there is a grave risk that Jaime F.'s return would expose him to grave risk of psychological harm, as set forth in 42 U.S.C. § 11603(e)(2)(A) and the Hague Convention, Art. 13(b), because Jaime F. has bonded and attached to his mother, Severina P., and removal from her for an extended period of time would likely cause unbonding and detachment and a grave risk of harm to Jaime F.

*Conclusion*

For the foregoing reasons,

**IT IS ORDERED** that Petitioner's Petition for Return of Child Pursuant to the Hague Convention is **DENIED** and that Jaime F. not be returned to Germany at this time.

**IT IS FURTHER ORDERED** that Jaime F. remain in the custody of his mother, Severina P. until such time as custody of Jaime

F. is awarded by a court of competent jurisdiction. This Order does not preclude Petitioner Steffen F. from visiting his son under reasonable conditions.

**IT IS FURTHER ORDERED** that the Order of Custody Pendente Lite filed March 6, 1997, is **VACATED**.