Souratgar v. Fair

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2014

(Argued: January 16, 2015        Decided: March 25, 2016)

Docket No. 14-904

_____

ABDOLLAH NAGHASH SOURATGAR,

*Petitioner-Appellee,*

—v.—

LEE JEN FAIR,

*Respondent-Appellant.*

_____

B e f o r e:    KATZMANN, *Chief Judge*, LOHIER and DRONEY, *Circuit Judges.*

_____

Respondent-Appellant Lee Jen Fair appeals from a judgment ordering her to pay to the prevailing petitioner-appellee, Abdollah Naghash Souratgar, $283,066.62 in expenses under the International Child Abduction Remedies Act, which directs district courts to issue such an order "unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). That determination requires district courts to weigh relevant equitable factors, including intimate partner violence. Having reviewed all relevant

equitable factors, we conclude that, because the respondent showed that the petitioner engaged in multiple, unilateral acts of intimate partner violence against her and that her removal of the child from the habitual country was related to that violence, and because there are no countervailing factors in the record in favor of the petitioner, such an award would be "clearly inappropriate." Accordingly, although the district court correctly considered intimate partner violence in its equitable analysis, it exceeded its discretion in its assessment of the evidence at issue and, in turn, in the weighing of equitable factors. For these reasons, we **REVERSE** the order and **VACATE** the judgment.

Judge Lohier concurs in a separate opinion.

————————————

ROBERT D. ARENSTEIN, New York, New York, *for Petitioner-Appellee*.

GARY SERBIN (Jordan L. Estes and Nicole E. Schiavo, *on the brief*), Hogan Lovells US LLP, New York, New York, *for Respondent-Appellant*.

————————————

KATZMANN, *Chief Judge*:

The International Child Abduction Remedies Act ("ICARA") provides that the prevailing petitioner in a child abduction case shall be awarded expenses incurred in connection with the petition "unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). That determination requires district courts to weigh relevant equitable factors, including intimate partner violence.

2

Respondent-appellant Lee Jen Fair ("Lee") appeals from a February 27, 2014 judgment following a February 20, 2014 order of the United States District Court for the Southern District of New York (Castel, *J.*), which awarded $283,066.62 in expenses to Petitioner-Appellee Abdollah Naghash Souratgar ("Souratgar"). Previously, Souratgar had petitioned for the return of Shayan, the son whose custody he and Lee shared in Singapore, under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89, *reprinted in* 51 Fed. Reg. 10494 (Mar. 26, 1986), and its domestic implementing legislation, ICARA, 22 U.S.C. §§ 9001–9011.[1] The district court granted that petition, and a panel of our Court affirmed. *See Souratgar v. Fair* (*Souratgar I*), No. 12-cv-7797, 2012 WL 6700214 (S.D.N.Y. Dec. 26, 2012), *aff'd sub nom.*, *Souratgar v. Lee* (*Souratgar II*), 720 F.3d 96 (2d Cir. 2013). Souratgar then sought an order directing Lee to pay the "necessary expenses" related to his successful petition pursuant to 22 U.S.C. § 9007(b)(3). Notwithstanding Lee's arguments that her indigence and Souratgar's acts of

---

[1] ICARA was formerly classified at 42 U.S.C. §§ 11601–11610, but has since been transferred to 22 U.S.C. §§ 9001–9011. We cite the current location throughout this opinion.

violence against her rendered the requested award clearly inappropriate, the district court ordered Lee to pay Souratgar $283,066.62. *See Souratgar v. Lee* (*Souratgar III*), No. 12-cv-7797, 2014 WL 704037, at \*9–12 (S.D.N.Y. Feb. 20, 2014).

In resolving whether it was clearly inappropriate to order Lee to pay expenses to Souratgar, our consideration is grounded in the record, which reveals that Souratgar committed intimate partner violence against Lee but Lee did not commit any violence against Souratgar. The district court was correct in considering this unilateral intimate partner violence as a relevant equitable factor, but, after reviewing the record, we find that the district court erred in its assessment of the relationship between the intimate partner violence and Lee's decision to remove Shayan from the country of habitual residence and thus erred in its weighing of the equitable factors. Because Lee established that Souratgar had committed multiple, unilateral acts of intimate partner violence against her, and that her removal of the child from the habitual country was related to that violence, an award of expenses to Souratgar, given the absence of countervailing equitable factors, is clearly inappropriate. Accordingly, we REVERSE the order and VACATE the judgment.

# BACKGROUND

Lee, a Malaysian national, and Souratgar, an Iranian national, married in 2007 and resided in Singapore. In 2008, Lee became pregnant, which is when, on her account, Souratgar began abusing her. Lee gave birth to their son, Shayan, in January 2009. After several years of marital discord, Lee eventually departed the marital home with Shayan in May 2011 and left Singapore with Shayan one year later.

After Lee departed Singapore, Souratgar filed a petition in the Southern District of New York seeking the return of Shayan to Singapore as provided by the Hague Convention and ICARA. In considering the petition, the district court conducted a nine-day evidentiary hearing at which both Lee and Souratgar testified. The district court ultimately granted the petition after concluding that Souratgar had established a prima facie case under the Hague Convention and that Lee had failed to prove either of her two asserted affirmative defenses. *See Souratgar I*, 2012 WL 6700214, at *4–17. Lee appealed, and a panel of this Court affirmed the judgment. *Souratgar II*, 720 F.3d at 100.

5

Souratgar then moved in the district court for an order directing Lee to pay his expenses related to Shayan's return to Singapore. ICARA provides that, if the petitioner succeeds, a district court "shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). The district court, in a finding not challenged by Souratgar, determined that only $283,066.62 of his requested $618,059.61 constituted necessary expenses related to the return of Shayan. *See Souratgar III*, 2014 WL 704037, at *2–8, *12. Lee argued that an order directing her to pay Souratgar's expenses would be clearly inappropriate for two reasons: (1) "Souratgar's past abusive behavior" against Lee and (2) Lee's "inability to pay." *Id*. at *9. The district court determined that neither argument was persuasive.

As to Lee's first argument, the district court acknowledged that it had, in considering the merits of Souratgar's petition for the return of Shayan, made detailed factual findings "that Souratgar engaged in abusive conduct" against

6

Lee. *Id.* The district court made those findings in the course of evaluating Lee's affirmative defense under Article 13(b) of the Hague Convention. Under that provision, a signatory state need not order the return of the child if the respondent establishes that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Hague Convention art. 13(b), 1343 U.N.T.S. at 101.

Lee had argued that Article 13(b) should apply because, if returned to Singapore, Shayan would face a grave risk of physical and psychological harm due to Souratgar's violence. The district court ultimately disagreed, finding no risk of physical harm to Shayan because "there is no credible evidence that petitioner physically abused the child." *Souratgar I*, 2012 WL 6700214, at *11. The district court also found psychological harm unlikely because Souratgar and Lee would probably never live together again, diminishing the prospect that Shayan would "bear witness to petitioner's abuse of respondent." *Id.* The district court further found that there was no evidence that Shayan "himself suffers from [post-traumatic stress disorder] or will have a negative reaction to being repatriated to

7

Singapore" and "that Singapore is well-equipped to mitigate any risk of harm to the child pending a final custody determination." *Id.*

In coming to this conclusion, the district court considered and made numerous factual findings about each party's allegations of abuse at the hands of the other. The district court was generally skeptical of many of the allegations, but was most inclined to credit those that were contemporaneously documented, explaining:

> Based upon an assessment of credibility and available corroboration or lack thereof, the Court finds that both parties have exaggerated their claims. The Court recognizes that victims of spousal abuse often do not come forward to report instances of domestic violence for many reasons and, therefore, a lack of near-contemporaneous documentation does not necessarily render a victim's claims unbelievable. In this particular case, however, the respondent did report instances of domestic abuse to the police or to the court. But these police and medical reports do not identify the most severe acts of violence claimed before this Court.

*Id.* at *7.

Specifically, the district court considered Lee's allegations that Souratgar: (1) on May 31, 2008, when Lee was pregnant, "hit and kicked her on her head and body," *id.*; (2) in March 2009, "struck her multiple times on her right shoulder while the child was breastfeeding in her arms," *id.* at *8; (3) during an argument

8

in late 2009 or early 2010, "took the child out of her arms and started to beat her on the head and back," *id.*; (4) on January 5, 2010, followed Lee to a neighbor's house and pulled her back into the marital home, where Souratgar "continued to beat her" causing "scratches and redness on her arms where he had grabbed her," *id.* (internal quotation marks and alterations omitted); (5) on August 15, 2011, when Lee met Souratgar at his office to pick up packages that belonged to her, "pulled [Lee's] hands and also pushed" her, from which she "suffered some bruises and scratches on" her chest and hands, *id.* at *9 (internal quotation marks omitted); (6) on November 22, 2011, chased Lee by car, attempting to overtake her vehicle "in a reckless and dangerous manner," *id.* (internal quotation marks omitted); and (7) "forced [Lee] to engage in certain sexual acts," *id.* at *10. The district court discredited some of these allegations, including the allegation of sexual assault, but found most of them to be credible. In short, the district court made a factual finding that Souratgar perpetrated repeated acts of intimate partner violence against Lee.

By contrast, the district court considered Souratgar's allegation that Lee "had tried to attack him with a knife and chopper a few times," but found

9

Souratgar's "account to be exaggerated and not credible." *Id.* at *8. Nowhere in the district court's decision is there any other suggestion that Lee had committed any violence, nor have we found any in our independent review of the record.

Despite these findings that Souratgar had committed violence but that Lee had not, the district court ordered Lee to pay Souratgar for his expenses because she "has not established that the past abuse in this case makes an award of fees clearly inappropriate." *Souratgar III*, 2014 WL 704037, at *9. In so doing, the district court acknowledged that other district courts had found awards of expenses to perpetrators of intimate partner violence to be clearly inappropriate, but nevertheless found Lee's case distinguishable. *See id.* Reasoning that Lee's departure from the marital home in May 2011 eliminated the dilemma faced by other victims who continued to reside with their abusers, the district court concluded that Lee "has not established that the past abuse of her was causally related to her decision to leave Singapore with her son." *Id.*

As to Lee's second argument against an order awarding expenses—that her indigence rendered such an order clearly inappropriate—the district court was likewise unpersuaded, because Lee had "not provided the Court with any

10

documentation of her assets or income beyond the [pension] account and the deed of her interest in her family's home." *Id.* at *11. The district court found that these documents undermined Lee's assertion of indigence, noting that she had approximately $150,000 in a Singaporean pension account that she may be able to access in the future and concluding that she would probably be able to sell her one-third interest in a family home to satisfy the judgment. *Id.* at *10. Notwithstanding Lee's sworn affidavit that she had been unemployed for five years and earned money by selling cakes "for $10 or $20, primarily to her friends," the district court expressed disappointment that Lee had "not provided the Court with any other information regarding her current income." *Id.* It concluded that an award "reduction in this case would neither remedy [Lee's] inability to pay nor serve the purposes of" ICARA. *Id.* at *12.

Accordingly, by Memorandum and Order of February 20, 2014, the district court ordered Lee to pay Souratgar $283,066.62 in expenses. *Id.* The Clerk of Court entered judgment on February 27, 2014, and Lee filed notice of this appeal on March 26, 2014.

11

**DISCUSSION**

**I. Jurisdictional Challenge to Timeliness of Notice of Appeal**

At the outset, we address Souratgar's contention that we lack jurisdiction to consider Lee's appeal. Rule 4 of the Federal Rules of Appellate Procedure requires that a notice of appeal be filed "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1)(A). This requirement is "jurisdictional in civil cases." *M.E.S., Inc. v. Snell*, 712 F.3d 666, 668 (2d Cir. 2013). Lee filed her notice of appeal on March 26, 2014, more than thirty days after the entry of the district court's February 20 Memorandum and Order but within thirty days of the entry of the February 27 judgment. As such, we must determine which date is the relevant one from which we should measure the timeliness of Lee's notice of appeal.

Souratgar contends that the relevant date from which we should measure the thirty-day period is February 20, the date of the order's entry, placing heavy reliance on *Perez v. AC Roosevelt Food Corporation* ("*AC Roosevelt*"), 744 F.3d 39 (2d Cir. 2013). There, the district court's order granting attorney's fees to the plaintiff was not appealed by the defendants within thirty days, but months later on a date

that was within thirty days of the date on which the attorney's fees award was memorialized in a judgment. *See id.* at 40–42. Pointing to Rule 58(a)(3) of the Federal Rules of Civil Procedure, which provides, in relevant part, that "a separate document [setting out the judgment] is not required for an order disposing of a motion . . . for attorney's fees under Rule 54," we held that the defendants' appeal was untimely. *AC Roosevelt*, 744 F.3d at 42. Because, in Souratgar's view, the motion on which he prevailed was one for attorney's fees under Rule 54, he argues that no separate document was required, and the thirty-day clock to file an appeal began to run against Lee on February 20, 2014.

We disagree for two independent reasons. First, the district court ordered Lee to pay not only attorney's fees but also Souratgar's expenses of transcription, lodging, travel, a fact witness, an expert witness, and the investigation he undertook to find Shayan, all expenses that ICARA specifies as presumptively reimbursable. *See Souratgar III*, 2014 WL 704037, at *12. The scope of the order underscores that the February 20 Memorandum and Order was disposing not simply of a motion for attorney's fees but of a broader motion seeking "necessary expenses incurred by or on behalf of the petitioner" under ICARA, which

13

includes but is not limited to attorney's fees and court costs. 42 U.S.C. § 11607(b)(3). Accordingly, it was not "a final order *solely* on the issue of attorney['s] fees" as in *AC Roosevelt*. 744 F.3d at 40 (emphasis added).

Quite apart from the proper taxonomy of the February 20 Memorandum and Order within the Rules, Lee's appeal was timely for a second reason: The order expressly directed the clerk to enter judgment, which the clerk did one week later. In such a circumstance, an appeal may always be taken from the judgment. Rule 4(a) is not a trap to lure prospective appellants into filing untimely notices of appeal where a district court's order—even one that does not *require* a separate document under Rule 58(a)—expressly directs entry of a judgment by separate document. The order providing for attorney's fees in *AC Roosevelt* did so in light of a settlement on all issues other than attorney's fees. The order also directed the clerk to close the case, but did not direct the clerk to enter judgment by separate document, as *Souratgar III* did. *Compare* Order, *Perez v. AC Roosevelt Food Corp.*, No. 10-cv-4824 (E.D.N.Y. Aug. 13, 2012) ("The Clerk of Court is respectfully directed to close the case."), *with Souratgar III*, 2014 WL 704037, at *12 ("The Clerk shall enter judgment in favor of Souratgar . . . .").

14

Souratgar's reliance on *S.L. ex rel. Loof v. Upland Unified School District*, 747 F.3d 1155 (9th Cir. 2014), fares no better because that case differs from this one in the same two important ways—there, the order appealed from resolved a motion seeking only attorney's fees and did not direct entry of a judgment by separate document. *See* Order, *S.L. v. Upland Unified Sch. Dist.*, No. 11-cv-4187 (C.D. Cal. Aug. 27, 2012), ECF No. 50.

Accordingly, we have jurisdiction to consider the merits of Lee's appeal, to which we now turn.

## II. ICARA's "Clearly Inappropriate" Standard

We review for abuse of discretion a district court's award of expenses under the Hague Convention. *See Ozaltin v. Ozaltin*, 708 F.3d 355, 374–75 (2d Cir. 2013). A district court abuses its discretion "if it base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *Id.* at 375 (quoting *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008)).

ICARA's presumption of an award of expenses to a prevailing petitioner is "subject to a broad caveat denoted by the words, 'clearly inappropriate.'" *Whallon*

15

*v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004). This caveat retains "the equitable nature of cost awards," so that a prevailing petitioner's presumptive entitlement to an award of expenses is "subject to the application of equitable principles by the district court." *Ozaltin*, 708 F.3d at 375 (quoting *Moore v. Cnty. of Delaware*, 586 F.3d 219, 221 (2d Cir. 2009)). "Absent any statutory guidance to the contrary, the appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'" *Id.* (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)).

Generally, in determining whether expenses are "clearly inappropriate," courts have considered the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition. *See, e.g.*, *Whallon v. Lynn*, No. Civ.A. 00-11009-RWZ, 2003 WL 1906174, at *4 (D. Mass. Apr. 18, 2003) (reducing fees, among other reasons, "because both parties bear responsibility for the degree of enmity between them"), *aff'd*, 356 F.3d 138; *Aly v. Aden*, No. 12-1960, 2013 WL 593420, at *20 (D. Minn. Feb. 14, 2013); *Silverman v. Silverman*, No. 00-cv-2274, 2004 WL 2066778, at *4 (D. Minn. Aug. 26, 2004).

Where, as here, the respondent's removal of the child from the habitual country is related to intimate partner violence perpetrated by the petitioner against the respondent, the petitioner bears some responsibility for the circumstances giving rise to the petition. In line with this reasoning, district courts in other circuits have concluded that "family violence perpetrated by a parent is an appropriate consideration in assessing fees in a Hague case." *Guaragno v. Guaragno*, No. 09-cv-187, 2010 WL 5564628, at *2 (N.D. Tex. Oct. 19, 2010) (finding that a prevailing petitioner's physical abuse of the respondent "is a significant factor in the determination of the assessment of fees and expenses"), *adopted by* 2011 WL 108946 (N.D. Tex. Jan. 11, 2011); *see also Aly*, 2013 WL 593420, at *20 (finding any award of expenses to the prevailing petitioner clearly inappropriate in part because the petitioner "was physically and verbally abusive toward respondent"); *Silverman*, 2004 WL 2066778, at *4 ("[That the petitioner] had been physically and mentally abusive toward respondent . . . is appropriately considered in determining fees.").

This concept is analogous to the equitable doctrine of unclean hands. The American legal system rightfully "closes the doors of a court of equity to one

17

tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945); *see also Moore v. Cnty. of Delaware*, 586 F.3d 219, 221 (2d Cir. 2009) (per curiam) (holding that under Rule 39 of the Federal Rules of Appellate Procedure, the denial of otherwise properly taxable costs "may be appropriate where a losing party can demonstrate misconduct by a prevailing party").

Furthermore, considering intimate partner violence as an equitable factor in the determination of whether an award of expenses is "clearly inappropriate" is not contrary to the legislative purpose of ICARA's fee-shifting provision. The sparse legislative history of the provision reveals that it was "intended to provide an additional deterrent to wrongful international child removals and retentions." H.R. Rep. No. 100-525, at 14 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 386, 395. In general, treating the fee-shifting provision as an additional deterrent furthers ICARA's overall purpose of discouraging parents from taking their custody battles across international borders. *See id.* at 5. But Congress did not provide that the provision's added deterrence was so overriding that courts *must* award fees regardless of the circumstances of a particular case. Rather, a common sense

18

interpretation of the text indicates that, *even if* an award of fees would serve a

deterrent purpose, that purpose must give way if awarding fees would be

"clearly inappropriate." This is in contrast to a determination of the merits of an

ICARA petition, where courts may only consider intimate partner violence

between a respondent and petitioner if it relates to the potential for grave risk of

physical or psychological harm to the child or would otherwise place the child in

an intolerable situation. Hague Convention art. 13(b), 1343 U.N.T.S. at 101. In the

fee-shifting context, Congress built a safety valve directly into the statute, leaving

it to courts to determine when an award of expenses would be clearly

inappropriate, notwithstanding the additional deterrence value such expenses

might provide.

The district court was therefore correct to consider Souratgar's unilateral

violence in its determination of whether to order Lee to pay expenses under

ICARA. *See Souratgar III*, 2014 WL 704037, at *9. However, we respectfully

conclude that the able district court exceeded its discretion in awarding expenses

to Souratgar in light of its fact-finding and its related analysis of the relevant

equitable factors. In the course of reviewing the petition, the district court made

explicit factual findings that Lee had not committed the violent acts alleged by Souratgar but that Souratgar had repeatedly perpetrated violence against her. *Souratgar I*, 2012 WL 6700214, at *11. But because Lee had fled the marital home to her sister's home within Singapore before fleeing the country, the district court found that she "ha[d] not established that the past abuse of her was causally related to her decision to leave Singapore." *Souratgar III*, 2014 WL 704037, at *9. We differ with the district court's conclusion on this point. First, this finding is belied by the record: The district court found that Souratgar's violence toward Lee did not stop when she left their home. *See Souratgar I*, 2012 WL 6700214, at *9, *11 (discussing violent incidents in August 2011 and November 2011, after her May 2011 departure from the marital home). Second, we find that Lee's testimony shows, and Souratgar does not genuinely dispute, that her departure was related to Souratgar's history of intimate partner violence. Therefore, we find that Souratgar bears some responsibility for the circumstances giving rise to the petition.

Accordingly, having reviewed all relevant equitable factors, because the respondent has shown that the petitioner engaged in multiple, unilateral acts of

intimate partner violence against her and that her removal of the child from the habitual country was related to that violence, and because there are no countervailing factors in the record in favor of the petitioner, an award of expenses would be "clearly inappropriate."

In so holding, we express no opinion about circumstances beyond the facts of this appeal, particularly where countervailing equitable factors are present.[2] We also do not attempt to catalog the possible countervailing equitable factors that a district court may properly weigh. This task is better left to the district courts to develop on a case-by-case basis so that they retain "broad discretion" in applying equitable principles to implement "the Hague Convention consistently with our own laws and standards." *Whallon*, 356 F.3d at 140. Here, the district court assessed two potential countervailing equitable factors—psychological

---

[2] As emphasized by the concurrence, we recognize that we lack authority, in the absence of legislative directive, to create a bright-line rule that an award of expenses would be clearly inappropriate whenever the district court makes a finding of unilateral intimate partner violence by the petitioner against the respondent. The district court must still assess all relevant equitable factors. We use the term "countervailing equitable factors" to focus the district court's attention, after it has identified that the petitioner has committed unilateral acts of intimate partner violence against the respondent, on equitable factors that would counterbalance its consideration of that violence. Here, there were no such equitable factors in the record.

abuse and abuse of the child—but neither was present in this case. *See Souratgar I*, 2012 WL 6700214, at *11 (discussing Souratgar's "abusive conduct . . . [that] included shouting and offensive name-calling"); *id.* at *7 ("The Court finds that both parties have deep love for Shayan and care greatly about his wellbeing.").

As a matter of clarification, we agree with the district court that a respondent's inability to pay an award is a relevant equitable factor for courts to consider in awarding expenses under ICARA.[3] *See, e.g.*, *Rydder v. Rydder*, 49 F.3d 369, 373–74 (8th Cir. 1995) (reducing an ICARA award to a "more equitable" amount in light of the respondent's "straitened financial circumstances"). However, this relevant equitable factor can never be a *countervailing* factor to intimate partner violence in a case like the one before us—it would remain clearly

---

[3] Although we agree that inability to pay is a relevant equitable consideration, we note our reservations about the district court's treatment of Lee's argument that she was unable to pay the requested award. Here, the district court pointed to Lee's Singaporean pension and her interest in her family home, notwithstanding her testimony that she could reach neither. *See Souratgar III*, 2014 WL 704037, at *9–12. Even assuming that it was not clearly erroneous to credit those assets to Lee's ability to pay, it appears that the award ordered may have been larger than those assets combined. Despite discussing these assets at some length, the district court never compared their sum with the contemplated award. We express no view on the appropriateness of an expenses award that is greater than a respondent's total assets, but such an award would, at a minimum, require a reasoned explanation.

inappropriate to order a victim of intimate partner violence to pay an expenses award to the perpetrator, absent countervailing equitable factors, even where the victim is wealthy.

Finally, we note that intimate partner violence in any form is deplorable. It can include a range of behaviors, from a single slap to a lethal blow. However, we need not determine in the matter at hand what quantum of violence must have occurred to warrant a finding that fees are "clearly inappropriate," given the repeated violence established in the record here. Those determinations we leave to be resolved as they arise in future cases.[4]

Here, after assessing all relevant equitable factors, because of the clarity of the factual record, the nature of the multiple, unilateral acts of violence, and the absence of countervailing equitable factors in favor of petitioner, we conclude that

[4] The concurrence poses a hypothetical in which a wife slaps a husband and the husband then abducts their child and invokes the slap to avoid paying for his wife's expenses in the event she successfully petitions for return of the child. *See* Concurrence at 6–7. We do not express an opinion about whether a single slap in every instance amounts to the level of intimate partner violence that would render an award clearly inappropriate, though clearly in some cases it may. In this hypothetical, the fact-finder would be charged with determining whether the slap was genuinely related to the abduction of the child and, if so, whether there are any countervailing equitable factors that would need to be considered. In short, this is a fact-intensive inquiry about which we do not opine.

an award of expenses to Souratgar is clearly inappropriate. In the ordinary course, we would remand the case to the district court to assess the petitioner's request for fees and costs consistent with our opinion. However, given the record in this case, we cannot envision any scenario where an award of expenses would not be clearly inappropriate. Accordingly, a remand would serve no useful purpose. *Cf. Rydder*, 49 F.3d at 373–74 (reducing fee award without remanding for consideration by the district court).

For these reasons, we REVERSE the order and VACATE the judgment of the district court.

LOHIER, Circuit Judge, concurring:

I agree that it is within a district court's discretion to consider intimate partner violence in determining whether an amount of costs is clearly inappropriate. I also agree with the majority that the District Court exceeded its discretion in awarding litigation expenses to Abdollah Naghash Souratgar in light of his appalling acts of violence and the other unique facts of this case. I write separately to emphasize that the majority opinion is extremely narrow in scope and confined to its particular facts, and to counsel district courts and panels of our Court not to draw from it any rule or presumption against awarding fees whenever a winning petitioner engages in acts of repeated "unilateral violence" against the losing respondent. As my colleagues in the majority recognize, such a presumption would conflict with traditional principles of equity that already permit district courts to consider such deplorable conduct in determining fee awards. Given the complicated nature of domestic disputes – where time, money, gender, power, psychological abuse, and other family circumstances, known and unknown, can alter the significance of an act of violence, or even repeated acts of violence – it is easy to see why Congress would conclude that the flexibility equity affords is better suited to

1

determining the propriety of a fee award than any bright-line presumption.

Applying traditional principles of equity has the virtue of tracking the relevant statutory provision in this case, § 9007(b) of the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9007(b), which creates a presumption <u>in favor of</u> awarding litigation expenses to prevailing petitioners that is displaced only when the award is "clearly inappropriate." And nothing in the statute suggests that courts should elevate any single equitable factor over another.

# I

Although repeated unilateral acts of intimate partner violence represent the kind of inequitable conduct that may reduce or even bar an award of litigation expenses, the majority opinion wisely avoids creating a presumption that such violence will always or even often be expected to result in a reduction or bar. Confining its holding to the specific facts of this case, the majority opinion makes clear that the violence in this case is an equal, not greater, equitable factor to be considered along with several other factors, "countervailing" or not. Treating it as a more significant factor would have unduly limited the wide equitable discretion of the district courts in precisely the circumstances where such discretion may be most important – the messy and

2

complicated area of domestic relations – and it would wrongly reverse a statutory presumption even though neither ICARA nor its legislative history provides a basis for doing so. Indeed, there is <u>no</u> evidence that Congress even considered intimate partner violence when it enacted ICARA. To the contrary, ICARA and the Convention have been criticized (rightly, in my view) for their complete <u>failure</u> to consider intimate partner violence as a mitigating or equitable factor in the removal of children from their countries of habitual residence.[1] <u>See</u> Karen Brown Williams, <u>Fleeing Domestic Violence: A Proposal to Change the Inadequacies of the Hague Convention on the Civil Aspects of International Child Abduction in Domestic Violence Cases</u>, 4 J. Marshall L.J. 39, 42-44 (2011); Merle H. Weiner, <u>International Child Abduction and the Escape from Domestic Violence</u>, 69 Fordham L. Rev. 593, 599, 602-03 (2000). The short of it is that the statute helps parents whose custody rights are infringed, not victims of violence who infringe custody rights.

## II

I agree that the District Court erred when it concluded that Souratgar's history of abuse was irrelevant to its determination of the award – a conclusion

---

[1] Congress can and, I think, should act to amend ICARA to favor respondents who are victims of intimate partner violence and who flee in part because of that violence.

driven by its mistaken factual finding that the abuse was unrelated to Lee's decision to flee Singapore.  See Souratgar v. Lee, No. 12-cv-7797, 2014 WL 704037, at *9 (S.D.N.Y. Feb. 20, 2014) ("Souratgar III").  It also erred by overlooking or misunderstanding relevant evidence that Lee could not pay the amount of the award.[2]  Id. at *10.  The panel's shared view of the District Court's errors follows from our previous guidance on the exercise of equitable discretion in the ICARA context and elsewhere.  See Ozaltin v. Ozaltin, 708 F.3d 355, 375 (2d Cir. 2013) ("Absent any statutory guidance to the contrary, the appropriateness of . . . costs [under § 9007(b)(3)] depends on the same general standards that apply when attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.  There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the relevant considerations." (quotation marks omitted)); Moore v. Cty. of Delaware, 586 F.3d 219, 221 (2d Cir. 2009) (under Rule 39 of the Federal Rules of Appellate Procedure, which affords the Courts of Appeals "discretion to deny [appellate] costs even if otherwise properly taxable," "denial of costs may be

---

[2] Despite these errors, the District Court appears to have understood that it had the discretion to award less than what it calculated to be Souratgar's necessary expenses ($283,000) but it declined to do so.

4

appropriate where a losing party can demonstrate," among other things, "misconduct by a prevailing party . . . or its own limited financial resources").

In virtually every case, the consequence of these errors would be to remand to the District Court to exercise its equitable discretion anew, consistent with § 9007(b)(3) and precedent. For that reason, I might have preferred to vacate the award and remand to the District Court to determine whether to reduce or reject it based on some other part of the record that has not been pointed out to us, or based on the parties' further development of the record with the benefit of our opinions in this case. As I've noted, district court judges are invariably better positioned than we are to conduct the sort of fact-bound inquiry required here. But at this stage I'm satisfied with my colleagues' assurance that they do not mean to <u>compel</u> the rejection of an award whenever there is evidence of multiple unilateral acts of intimate partner violence in the absence of "countervailing factors," a result that would inappropriately reverse ICARA's clear presumption that the respondent shall pay the petitioner's expenses. I am also persuaded that the case has gone on long enough that the record is about as complete as it will be. Given the narrow scope of the majority

opinion, the difference between remand and reversal is too minor to warrant a dissent in this particular case.

III

As the majority agrees, in the context of a statute like ICARA it is important, first, that we not cherry-pick national standards to determine that an award of costs and fees is presumptively completely barred, and second, that we recall that "[w]here statutes have regulated the conduct in question, the public interest has been determined by the legislature," not by the courts. 1 Dan B. Dobbs, Law of Remedies § 2.4(5), at 112 (2d ed. 1993). This is not to say that we can't sometimes, as here, reconcile the general public interest in deterring intimate partner violence with ICARA's focus on facilitating the return of an abducted child and deterring wrongful removals. See 22 U.S.C. § 9001. But there are cases where emphasizing intimate partner violence at the expense of other factors will clearly conflict with both the legislative purpose of ICARA and common sense.

Consider the following example. An estranged husband and wife abroad have a series of heated arguments over a brief time about their 3-year-old child, who is almost exclusively cared for by the wife. In the course of the arguments,

6

the wife slaps or pushes the husband. Later one night, the husband abducts their child and travels to New York City. After an arduous legal ordeal – one that saps most of her finances – the wife prevails in an ICARA action and secures the return of her child. The husband points to the wife's past violence as one of several genuine reasons for abducting their child and traveling to the United States. This example has the sort of "countervailing" equitable factors that the majority may have in mind and that a district court might find warrants allowing the wife to recover some or all of her expenses. In fact, I would think it inequitable to bar any award to the wife even under these circumstances as "clearly inappropriate."

One final observation. As the facts of this case demonstrate, the costs of returning an abducted child can be prohibitive. Here they amounted to several hundred thousand dollars. Nothing about today's opinion should make a poor or middle-class (but perfectly fit) parent with any incident of intimate partner violence hesitate more than they otherwise might to bring an action in our Circuit or struggle to find quality counsel to do so.[3]

---

[3] Peter H. Pfund, The Hague Convention on International Child Abduction, the International Child Abduction Remedies Act, and the Need for Availability of Counsel for All Petitioners, 24 Fam. L.Q. 35, 50 (1990) (suggesting that § 9007(b)(3) of ICARA "was intended to help foreign-based left-behind parents

## IV

To summarize, violence, when it exists, is a factor that district courts can consider in determining the appropriateness and the size of a fee award in an ICARA action. Still, no single factor, not even intimate partner violence, can transform a strong statutory presumption in favor of fees into a presumption against fees. It bears repeating that the District Court appears to have understood these principles, but erred in finding that the abuse was not causally related to Lee's decision to flee Singapore and mistakenly considered assets that were inaccessible to Lee. In the vast majority of cases the ultimate decision about what constitutes a "clearly inappropriate" award of fees would remain with the district court, where it belongs. Because this case is, as the majority points out, unique in its facts and has a complete record, I can live with reversing the judgment.

---

afford to file a well-founded Convention return action with reduced risk that the petitioner would ultimately be stuck with the bill for attorney's fees" and "was also intended to add to the deterrent effect of the Convention on would-be abductions or wrongfully retained persons"); see also 22 U.S.C. § 9007(b)(2) ("Subject to [section 9007(b)(3), which presumptively requires the losing respondent to pay all necessary expenses incurred by the petitioner], legal fees or court costs incurred in connection with an action brought under [ICARA] . . . shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs.").