Matter of Luisa JJ. v Joseph II.

2026 NY Slip Op 02313

April 16, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Luisa JJ., Respondent,

v

Joseph II., Appellant. (And Another Related Proceeding.)

Decided and Entered:April 16, 2026

CV-25-0174

Calendar Date: February 18, 2026

Before: Reynolds Fitzgerald, J.P., Ceresia, Fisher, Powers And Mackey, JJ.

Green Kaminer Min & Rockmore LLP, New York City (Michael Banuchis of counsel), for appellant.

Gregory V. Canale, Queensbury, for respondent.

[*1]

Ceresia, J.

Appeal from an order of the Supreme Court (Martin Auffredou, J.), entered December 19, 2024 in Warren County, which, in two proceedings pursuant to Domestic Relations Law article 5-a, granted petitioner's application for fees.

Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2013). Following the parties' separation in 2019, they evidently filed a written stipulation in an Italian court whereby they agreed that the child would live primarily in Italy with the mother and would spend extended periods of time in New York with the father. In December 2022, shortly after arriving in New York for a visit, the child disclosed to the father that he had been sexually abused several times in Italy by a minor relative of the mother's boyfriend. According to the father, the child indicated that the mother had not intervened to stop the abuse even after the child told her about it. Based upon this disclosure, the father chose not to return the child to Italy at the end of the visit but instead retained the child in New York. The mother then commenced a proceeding for the return of the child to Italy pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (TIAS No. 11670, 1343 UNTS 89 [1980] [hereinafter the Hague Convention]). The father moved for, among other things, dismissal of the petition or, in the alternative, a hearing. Supreme Court summarily ordered the child's return to Italy. This Court reversed on appeal, finding that although the mother had established that the father had wrongfully retained the child, the father had raised sufficient issues of fact to warrant a hearing with respect to the application of the "grave risk" and "age and maturity" exceptions under the Hague Convention (219 AD3d 1628, 1634-1635 [3d Dept 2023]).

Following remittal, an eight-day fact-finding hearing was held, at the conclusion of which Supreme Court granted the mother's petition and ordered the child's return to Italy. The mother thereafter moved to recover counsel fees and other expenses pursuant to 22 USC § 9007 (b) (3), a provision of the International Child Abduction Remedies Act (see 22 USC §§ 9001 et seq. [hereinafter ICARA]), which implements the Hague Convention. The father opposed. Supreme Court granted the mother's motion, awarding her $108,491.83, and the father appeals.

In accordance with ICARA, "[a]ny court ordering the return of a child pursuant to [the Hague Convention] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees . . . and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate" (22 USC § 9007 [b] [3]; see Souratgar v Lee Jen Fair, 818 F3d 72, 75 [2d Cir 2016]; Ozaltin v Ozaltin, 708 F3d 355, 374 [2d Cir 2013]). The burden rests with the respondent to show that such an award would be clearly [*2]inappropriate (see Souratgar v Lee Jen Fair, 818 F3d at 79; Ozaltin v Ozaltin, 708 F3d at 375). This inquiry is equitable in nature and involves consideration of factors including, as relevant here, whether the respondent is able to pay the award (see Souratgar v Lee Jen Fair, 818 F3d at 81) and whether the respondent had a "reasonable basis for thinking at the time of removing the child[ ] . . . that [his or] her actions were consistent with [applicable] law" (Ozaltin v Ozaltin, 708 F3d at 375).

If the court finds that an award would not be clearly inappropriate, it must then determine the proper amount of the fee. The aforementioned equitable factors are frequently used in making that calculation (see e.g. Ozaltin v Ozaltin, 708 F3d at 376; Mendoza v Silva, 987 F Supp 2d 910, 916-917 [ND Iowa 2014]). In addition, federal case law directs the application of the lodestar method (see Tereshchenko v Karimi, 2024 WL 3342759, *2, 2024 US Dist LEXIS 120033, *3 [SD NY, July 9, 2024, No. 23cv2006 (DLC)]; Tavarez v Jarrett, 252 F Supp 3d 629, 641 [SD Tex 2017]). "Under the lodestar method, the court determines the reasonable hourly rate and multiplies it by the reasonable number of hours expended, then adjusts the fee based upon certain subjective criteria" (Flemming v Barnwell Nursing Home & Health Facilities, Inc., 56 AD3d 162, 165 [3d Dept 2008] [citations omitted], affd 15 NY3d 375 [2010]), such as "the skill and experience of the attorney and the complexity of the case" (Board of Trustees of the Vil. of Groton v Pirro, 170 AD3d 1479, 1480 [3d Dept 2019]; see Loughlin v Meghji, 240 AD3d 875, 877 [2d Dept 2025]). "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended" (Lunday v City of Albany, 42 F3d 131, 134 [2d Cir 1994]). "While the determination as to the proper amount of an award of counsel fees lies largely within the discretion of the court, th[at] discretion is not unlimited" (Flemming v Barnwell Nursing Home & Health Facilities, Inc., 56 AD3d at 165 [internal quotation marks, brackets and citations omitted]; see Souratgar v Lee Jen Fair, 818 F3d at 78; Ozaltin v Ozaltin, 708 F3d at 374-375).

In his opposition to the mother's motion, the father argued that an award of counsel fees and expenses to the mother was clearly inappropriate and should be denied for three reasons. First, the father contended that he was unable to pay the amount requested, submitting an affidavit and statement of net worth in support of his claim that he lacked assets and carried heavy debt. Second, the father maintained that he had a reasonable basis to retain the child in New York in light of the child's disclosure of sexual abuse in Italy while in the mother's care, and pointed to Supreme Court's earlier finding in the case that "there is evidence of some sort of sexual encounter between the child and the Italian minor." Third, the [*3]father asserted that the mother had failed to adequately document her claimed expenses, providing a chart listing billing entries that were improperly block-billed, vague or excessive.

Supreme Court ruled in conclusory fashion that the mother's request for fees was not clearly inappropriate and the amount sought $108,491.83 was not unreasonable. The court gave no indication that it had considered the equitable factors typically examined in an ICARA fee determination, nor did it set forth any analysis concerning the claimed deficiencies with the billing entries. As a result, we are unable to review the propriety of the court's exercise of its discretion (see Fleig Servs. Inc. v American Recycling & Mfg. Co., Inc., 191 AD3d 1346, 1346 [4th Dept 2021]; Matter of HSBC Bank USA, N.A. [Vaida], 151 AD3d 1712, 1713 [4th Dept 2017]). We must therefore remit for Supreme Court to consider all of the appropriate factors and arguments raised by the father, resolve whether a fee award would be clearly inappropriate in the first instance and, if it would not be, determine the proper amount of the award.

Reynolds Fitzgerald, J.P., Fisher, Powers and Mackey, JJ., concur.

ORDERED that the order is reversed, on the law, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.